Michael E. **KELLY**, Plaintiff, Appellant,

v.

Robert **MARCANTONIO**, etc., et al., Defendants, Appellees.

Stephen B. Kelly, Plaintiff, Appellant,

v.

Robert Marcantonio, etc., et al., Defendants, Appellees.

Michael E. Kelly, Plaintiff, Appellee,

v.

Robert Marcantonio, Defendant, Appellee.

Roman Catholic Bishop, et al., Defendants, Appellants.

Stephen B. Kelly, Plaintiff, Appellee,

v.

Robert Marcantonio, Defendant, Appellee.

Roman Catholic Bishop, et al., Defendants, Appellants.

Kenneth Smith, Plaintiff, Appellant,

v.

William C. O'Connell, et al., Defendants, Appellees.

Kenneth Smith, Plaintiff, Appellee,

v.

William C. O'Connell, et al., Defendant, Appellee.

Roman Catholic Bishop, et al., Defendants, Appellants.

Nos. 98–1438, 98–1439, 98–1533, 98–1542, 98–2137 and 98–2138.

United States Court of Appeals, First Circuit.

Heard May 3, 1999.

Decided Aug. 6, 1999.

Richard C. Bicki, with whom Susan E. McGuirl, Cerilli, McGuirl & Bicki, Lise Iwon and Laurence & Iwon were on brief, for appellants Michael E. Kelly and Stephen B. Kelly.

Carl P. DeLuca for appellant Kenneth Smith.

Thomas R. Bender, with whom James T. Murphy, Hanson, Curran, Parks & Whitman and William T. Murphy were on brief, for appellees Roman Catholic Bishop, et al.

Gerald C. DeMaria, with whom Paul S. Callaghan and Higgins Cavanagh & Cooney, LLP were on brief, for appellee Robert Marcantonio.

Charles Wilson, with whom William T. Murphy, James T. Murphy, Thomas R.

Bender and Hanson, Curran, Parks & Whitman were on brief for defendants.

Before Torruella, Chief Judge, Stahl and Lynch, Circuit Judges.

TORRUELLA, Chief Judge.

In these consolidated cases, plaintiff-appellants Michael Kelly, Stephen Kelly, and Kenneth Smith seek to recover damages for alleged sexual abuse they suffered when they were minors. Plaintiff-appellants allege that the perpetrators of this sexual abuse were priests serving in the Roman Catholic Diocese of Providence, Rhode Island. The defendant-appellees are the priests, Father Robert Marcantonio ("Marcantonio") and Father William C. O'Connell ("O'Connell"), various diocesan officials, and the churches to which the priests were assigned (collectively, the "hierarchy defendants"). Plaintiff-appellants appeal the district court's grant of summary judgment in favor of all defendant-appellees on the ground that plaintiff-appellants' claims are barred by the statute of limitations. The hierarchy defendants also appeal, challenging the district court's denial of their motion to dismiss on the ground that adjudication of the claims asserted against them would violate the religious autonomy principle rooted in the First Amendment.

## BACKGROUND

Because these appeals focus on the specific issues of whether plaintiff-appellants' claims of childhood sexual abuse are time-barred, and whether the First Amendment precludes the district court from adjudicating the claims asserted against the hierarchy defendants, it is not necessary to provide a complete account of the allegations set forth in the complaints. We will, however, sketch the facts central to the issues before us.

In their consolidated cases, plaintiff-appellants seek to recover damages under various state law tort theories for the alleged sexual abuse they suffered when they were minors. In addition to the claims asserted against the priest-perpetrators, plaintiff-appellants assert various claims sounding in negligence and vicarious liability against the non-perpetrator hierarchy defendants.

Specifically, plaintiff-appellant Kenneth Smith alleges that he was sexually abused by O'Connell during the period between 1972 and 1977 while he was in high school. Plaintiff-appellants Stephen and Michael Kelly allege that they were sexually abused by Marcantonio. Stephen alleges that the assaults on him took place between 1975 and 1981, and Michael alleges that he was assaulted between 1981 and 1985. Plaintiff-appellants further allege that the hierarchy defendants knew that O'Connell and Marcantonio previously had committed sexual assaults and that the hierarchy defendants not only failed to disclose this information, but also engaged in a "cover-up" after the fact by transferring the priests to different parishes. All three plaintiff-appellants filed their lawsuits in 1993—more than eight years after the alleged abuses occurred.

Prior to 1992, the statute of limitations set forth in § 9–1–14(b) applied to all claims of childhood sexual abuse. It requires all "actions for injuries to the person" to be brought within three years after the cause of action accrues.[1] See R.I. Gen. Laws § 9–1–14(b). Under § 9–1–14(b), a cause of action for childhood sexual abuse accrues on the date of injury. See Kelly v. Marcantonio, 678 A.2d 873, 877 (R.I.1996).

In its 1993 legislative session, the Rhode Island Legislature enacted § 9–1–51, which enlarged the statute of limitations period for claims against perpetrators[2] of

1. Section 9–1–14(b) provides: "Actions for injuries to the person shall be commenced and sued upon within three (3) years next after the

cause of action shall accrue, and not after." R.I. Gen. Laws § 9–1–14(b).

2. In Kelly, the Rhode Island Supreme Court defined "perpetrator" as:

childhood sexual abuse. *See id.* at 876. Section 9–1–51 permits an action against the perpetrator to be brought up to seven years after the victim discovers or reasonably should have discovered that the abuse occurred. *See* R.I. Gen. Laws § 9–1–51(a). The Rhode Island Supreme Court has held, however, that § 9–1–51 may not be applied retroactively to revive claims previously time-barred as of July 25, 1993, the effective date of the legislation. *See Kelly,* 678 A.2d at 882, 883. It is undisputed that all of plaintiff-appellants' claims were time-barred prior to the effective date of § 9–1–51. Therefore, the seven-year statute of limitations contained in § 9–1–51 does not apply here.

To avoid dismissal under § 9–1–14(b), plaintiff-appellants rely primarily upon two separate tolling theories. The first is contained in § 9–1–19, which tolls the period of limitations with respect to persons of "unsound mind." Section 9–1–19 provides, in relevant part:

> If any person at the time any such cause of action shall accrue to him or her shall be ... of unsound mind ... the person may bring the cause of action, within the time limited under this chapter, after the impediment is removed.

R.I. Gen. Laws § 9–1–19. Plaintiff-appellant Smith argues that his inability to remember the alleged sexual assaults by Fr. O'Connell until sometime in 1991 or 1992 qualifies as a tolling feature under the "unsound mind" provision, thus saving his claims from dismissal. Plaintiff-appellants Stephen and Michael Smith make a slightly different argument. The Smiths claim that although they have been conscious of the assaults on them ever since they occurred, they did not appreciate their wrongful nature until sometime in 1991 because Fr. Marcantonio informed them

> the person who at the time of the abuse would have been subject to the criminal prosecution pursuant to [Rhode Island's criminal childhood sexual abuse statute]. That person under our law can only be the person who actually commits the criminal sexual act ... and not his employer or

that such assaults were part of their religious training in sexuality. The Smiths contend that they were of "unsound mind" up until the time they realized the wrongful nature of Fr. Marcantonio's advances, and thus their claims against Fr. Marcantonio are also preserved.

The second tolling provision upon which plaintiff-appellants rely is contained in § 9–1–20. Section 9–1–20 postpones accrual of a cause of action that has been fraudulently concealed:

> If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence.

R.I. Gen. Laws § 9–1–20. Plaintiff-appellants assert that the hierarchy defendants' failure to disclose their knowledge of prior sexual misconduct by both O'Connell and Marcantonio constitutes fraudulent concealment within the meaning of § 9–1–20. Thus, plaintiff-appellants contend that the period of limitations on their claims against the hierarchy defendants did not begin to run until they first discovered the hierarchy defendants' prior knowledge and concealment. Plaintiff-appellants Stephen and Michael Kelly also rely on § 9–1–20 to preserve their claims against Fr. Marcantonio. The Kellys assert that Fr. Marcantonio fraudulently concealed the existence of their causes of action against him by falsely representing that his sexual assaults constituted religious training in sexuality. Thus, the Kellys contend that their causes of action against Fr. Marcantonio did not accrue until they first discovered the falsity of these representations.

> supervisor, unless that employer or supervisor actually aids and assists in the commission of the criminal act to the degree that he or she would be subject to prosecution under [Rhode Island's criminal childhood sexual abuse statute].
> 678 A.2d at 876.

## DISCUSSION

■ Before we can delve into the issues raised in this appeal, we must first determine the order in which we must proceed. As noted *supra*, in response to the claims asserted against them, the hierarchy defendants moved to dismiss on the ground that the religious autonomy principle rooted in the First Amendment precluded the district court from adjudicating the claims asserted against them. Throughout this litigation, both parties have characterized the hierarchy defendants' motion as a motion to dismiss for lack of subject matter jurisdiction. Whether the defendants' motion involves subject matter jurisdiction at all is a debatable point, but we will accept, arguendo, the parties' characterization. Therefore, on appeal, the first question we must resolve is whether the United States Supreme Court's decision in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), requires us to address the hierarchy defendants' First Amendment argument before considering the merits of plaintiff-appellants' claims.

In *Steel Co.*, the Supreme Court declared that courts should generally determine whether subject matter jurisdiction exists before reaching the merits of a plaintiff's claim. *See* 523 U.S. at 92, 96, 118 S.Ct. 1003. In its opinion, however, the Court narrowly used the term "subject matter jurisdiction," making a clear distinction between Article III subject matter jurisdiction and other sources of subject matter jurisdiction. As this court recently recognized, the decision in *Steel Co.* "distinguishes between Article III jurisdiction questions and statutory jurisdiction questions, holding that the former should ordinarily be decided before the merits, but the latter need not be." *Parella v. Retirement Bd. of the Rhode Island Employees'*

*Retirement System*, 173 F.3d 46, 54 (1st Cir.1999).

■ It is clear that the hierarchy defendants' religious autonomy arguments do not derive from Article III. It is the First Amendment—and not Article III—that prohibits secular courts from intervening in the internal affairs of the hierarchical churches by deciding issues of religious doctrine. *See, e.g., Serbian Eastern Orthodox Diocese for the United States and Can. v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). This court recently held that an Eleventh Amendment defense raised by a state should not be treated as an Article III question for the purposes of *Steel Co. See Parella*, 173 F.3d at 57. In reaching this conclusion, the *Parella* court reasoned that the relevant maxim outside the Article III context "is not that federal courts cannot act without first establishing their jurisdiction, but rather that courts should not reach constitutional questions in advance of the necessity of deciding them." *Id.* at 56 (internal quotations omitted). We see no reason why the reasoning of *Parella* should not control here. We therefore choose to defer the hierarchy defendants' First Amendment arguments, and proceed directly to the merits of plaintiff-appellants' statute of limitations tolling claims.[3]

## STATUTE OF LIMITATIONS

■ In the proceedings below, the district court granted summary judgment in favor of defendants on the ground that plaintiff-appellants' claims of childhood sexual abuse were time-barred. We review the district court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmovants.

---

**3.** Although we ultimately do not reach the hierarchy defendants' First Amendment argument, *see infra*, neither do we vacate the district court's memorandum and order denying the hierarchy defendants' motion to dismiss, as the hierarchy defendants have asked us to do.

*See Dominique v. Weld,* 73 F.3d 1156, 1158 (1st Cir.1996).

■■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment will be properly entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this case, plaintiff-appellants bear the burden of proving the applicability of the tolling provisions contained in §§ 9–1–19 and 9–1–20. *See Bonilla–Aviles v. Southmark San Juan, Inc.,* 992 F.2d 391, 393 (1st Cir.1993).

### a. "Unsound mind"

■ Section 9–1–19 does not define "unsound mind." Nor has the Rhode Island Supreme Court defined the term for purposes of statute of limitations tolling purposes. In the proceedings below, the district court certified to the Rhode Island Supreme Court the question of whether "repressed recollection of past sexual abuse could qualify as a tolling feature encompassed within the 'unsound mind' factor in § 9–1–19." *Kelly,* 678 A.2d at 879. Unfortunately, the Rhode Island Supreme Court did not provide clear guidance, responding merely that whether repressed recollection is included within the tolling condition of "unsound mind" within a particular case is a "question of law determination to be made by the trial justice." *See id.*[4]

■ Left to its own devices, the district court engaged in exhaustive and thorough research in an attempt to discover what meaning the General Assembly ascribed to the term "unsound mind" when it enacted § 9–1–19. It ultimately concluded that "unsound mind" as used in § 9–1–19 refers to a condition that renders a plaintiff incapable of managing his or her everyday affairs. We can find no reason to disturb the court's well-reasoned conclusion.

Although the Rhode Island Supreme Court has never defined "unsound mind" for statute of limitations tolling purposes, it has interpreted the term, in other contexts, as a condition that renders an individual legally incompetent or incapable of managing his or her everyday affairs. *See Miller v. Rhode Island Hosp.,* 625 A.2d 778, 785 (R.I.1993) ("unsound mind" in the context of legal incompetency defined as the inability to govern one's self and manage one's affairs); *Sosik v. Conlon,* 91 R.I. 439, 164 A.2d 696, 698 (1960) (in context of suit for cancellation of real estate mortgage and promissory note, "unsound mind" characterized as "a condition of insanity or idiocy"). These decisions are consistent with the district court's interpretation.

■ Further, it is a rule of statutory construction in Rhode Island that "[e]xceptions in statutes of limitations in favor of persons laboring under disabilities are strictly construed." *Kenyon v. United Electric Railways Co.,* 51 R.I. 90, 151 A. 5, 8 (1930). The district court's interpretation clearly comports with this rule.

Finally, we note that, as a federal court sitting in diversity jurisdiction at plaintiff-appellants' election, we are reluctant to push state law well beyond its current confines. *See, e.g., Siedle v. Putnam Investments, Inc.,* 147 F.3d 7 (1st Cir.1998). Thus, we are not inclined to accept plaintiff-appellants' argument in favor of an expansive definition of "unsound mind." Such an argument should have been di-

---

**4.** We note that the district court did not certify to the Supreme Court the slightly different question presented by the Kellys, namely, whether an inability to appreciate the wrong-ful nature of Fr. Marcantonio's actions could qualify as a tolling feature encompassed within the "unsound mind" factor in § 9–1–19.

rected to the state courts in the first instance.

Based on the foregoing, and because we find plaintiff-appellants' arguments in favor of their more liberal interpretation unpersuasive, we affirm the district court's well-reasoned interpretation. We pause only to comment on several arguments raised by plaintiff-appellants in their briefs.

First, plaintiff-appellants take issue with the district court's conclusion with respect to the inferences that can be drawn from the historical context of § 9–1–19. In its opinion, the district court noted that § 9–1–19 was enacted as part of the Court and Practice Act of 1905, which includes a chapter on probate proceedings. The district court further noted that the probate chapter in the Court and Practice Act authorized the appointment of a guardian for "the person and estate of any idiot, lunatic or person of unsound mind...." It therefore concluded that at the time of enactment of § 9–1–19, the General Assembly equated the condition of "unsound mind" with the conditions of idiocy and lunacy, both of which are recognized as completely incapacitating conditions. In their briefs, plaintiff-appellants seize on the district court's reasoning to argue that because the General Assembly has changed the standard for appointment of guardians, *see* R.I. Gen. Laws § 33–15–4, the historical context of § 9–1–19 should no longer bear on its interpretation. Plaintiff-appellants' argument is unpersuasive. The General Assembly's subsequent amendment of the law governing appointment of guardians has little bearing on the legislature's intended meaning of the term "unsound mind" within the context of § 9–1–19.

▮ Plaintiff-appellants next argue that the district court's conclusion that unsound mind refers to a condition that renders a plaintiff incapable of managing his or her everyday affairs is inconsistent with the Rhode Island Supreme Court decision in *Kelly v. Marcantonio*, 678 A.2d 873 (R.I.1996). We disagree. Although the Rhode Island Supreme Court left open the possibility that repressed recollection of past sexual abuse could qualify as an unsound mind disability under § 9–1–19, it stopped well short of adopting such a definition. And, as we have said, we are reluctant to push state law to new frontiers in a plaintiff-elected diversity action where the state's Supreme Court has evinced reluctance to take the approach the diversity plaintiff proposes. *See Siedle*, 147 F.3d at 7.

Finally, plaintiff-appellants challenge the district court's conclusion that the subsequent enactment of § 9–1–51 lends support to its interpretation of the "unsound mind." We agree with plaintiff-appellants that the subsequent enactment of § 9–1–51 lends support only to the district court's conclusions that: (1) the 1993 Rhode Island legislature wished to distinguish between "unsound mind" and repressed recollection; and (2) the legislature's decision not to incorporate a discovery provision in § 9–1–14(b) at the same time that it enacted the discovery provision contained in § 9–1–51 evinced an intent that claims governed by § 9–1–14(b) continue to be considered as accruing at the time of injury. This point does not, however, persuade us that the district court's conclusion was error.

In sum, because we are unpersuaded by plaintiff-appellants' arguments, we affirm the district court's interpretation of "unsound mind." Further, because the facts are undisputed, and plaintiff-appellants challenge only the district court's legal interpretation of "unsound mind," we need not re-apply the law to the facts. Plaintiff-appellants have never argued that their respective conditions satisfy the definition of "unsound mind" offered by the defendants, and ultimately adopted by the district court. As plaintiff-appellants concede in their memorandum in opposition to summary judgment, "if the court adopts Defendants' definition [of unsound mind], Defendants must prevail on this issue." We agree with the district court (and with

plaintiff-appellants) that, even when the evidence presented by the plaintiff-appellants is viewed in the light most favorable to them, it fails to establish that they suffered from "unsound mind" within the meaning of § 9–1–19.

### b. Fraudulent concealment

We next address plaintiff-appellants' fraudulent concealment arguments. As previously noted, plaintiff-appellants rely on the fraudulent concealment tolling doctrine to preserve their claims against the hierarchy defendants and Father Marcantonio. Specifically, plaintiff-appellants allege that the hierarchy defendants knew that both Frs. Marcantonio and O'Connell had previously committed sexual assaults and that the hierarchy defendants not only failed to disclose this information, but also engaged in a cover-up by transferring these priests from parish to parish whenever allegations of sexual abuse surfaced. Plaintiff-appellants contend that this behavior postponed the accrual of their claims against the hierarchy defendants until plaintiff-appellants became aware of the hierarchy defendants' knowledge and concealment. Plaintiff-appellants Stephen and Michael Kelly further contend that Father Marcantonio fraudulently concealed the existence of their causes of action against him by convincing them that his sexual advances were part of their religious training in sexuality. These factual assertions were denied and the district court did not test the truth of the assertions because it concluded that they did not, as a matter of law, meet the definition of fraudulent concealment.

■ We first address the fraudulent concealment tolling theory as it applies to plaintiff-appellants' claims against the hierarchy defendants. In order to establish fraudulent concealment, plaintiff-appellants must prove that: (1) the hierarchy defendants made an actual misrepresentation of fact; and (2) in making such misrepresentation, the hierarchy defendants

fraudulently concealed the existence of plaintiff-appellants' causes of action. *See* R.I. Gen. Laws § 9–1–20. On appeal, plaintiff-appellants contend that the district court erred by interpreting "actual misrepresentation" as requiring some express misrepresentation or affirmative conduct on the part of the hierarchy defendants. In the alternative, plaintiff-appellants argue that, even if § 9–1–20 does require an express misrepresentation or some affirmative conduct, a fiduciary relationship existed between the hierarchy defendants and plaintiff-appellants, which imposed on the hierarchy defendants a duty to disclose their knowledge of previously committed sexual assaults. Under this theory, plaintiff-appellants contend that the hierarchy defendants' silence about the prior assaults by Frs. Marcantonio and O'Connell should be considered an "actual misrepresentation" within the meaning of § 9–1–20.

■ The Rhode Island Supreme Court has never specifically addressed the fiduciary relationship theory asserted by plaintiff-appellants within the context of § 9–1–20. Nor has the Supreme Court addressed the specific question of whether an "actual misrepresentation" within the meaning of § 9–1–20 must consist of an express or affirmative misrepresentation. Fortunately, we conclude that we need not be the first court to resolve these specific questions of Rhode Island law. For even assuming *arguendo* that plaintiff-appellants' interpretation prevails, and the hierarchy defendants' silence does qualify as an "actual misrepresentation" within the meaning of § 9–1–20, we fail to see how such silence concealed from plaintiff-appellants the "existence of [their] cause of action." R.I. Gen. Laws § 9–1–20.

■ All of plaintiff-appellants' claims are claims for damages for the sexual abuse perpetrated by the priest-defendants.[5] In making these claims, plaintiff-

---

5. At oral argument, plaintiff-appellants attempted to articulate a theory of the hierarchy

appellants do not allege that the hierarchy defendants' silence misled them into believing that the alleged sexual abuse did not occur, that it had not been committed by the priests, or that it had not resulted in injury to plaintiff-appellants. In other words, the hierarchy defendants never concealed from any of the plaintiff-appellants the fact of the injury itself. Rather, the essence of plaintiff-appellants' fraudulent concealment argument is that the hierarchy defendants' silence concealed from them an additional theory of liability for the alleged sexual abuse. This argument misses the mark. For a cause of action to accrue, the entire theory of the case need not be immediately apparent. *See Arnold v. R.J. Reynolds Tobacco Co.*, 956 F.Supp. 110, 117 (D.R.I.1997); *Benner v. J.H. Lynch & Sons*, 641 A.2d 332, 337 (R.I. 1994). Once injured, a plaintiff is under an affirmative duty to investigate diligently all of his potential claims. *See Arnold*, 956 F.Supp. at 117; *Benner*, 641 A.2d at 338. In this case, as soon as plaintiff-appellants became aware of the alleged abuse, they should also have been aware that the hierarchy defendants, as the priests' "employers," were potentially liable for that abuse. *See Doe v. Archdiocese of Washington*, 114 Md.App. 169, 689 A.2d 634, 645 (1997) (a plaintiff who is sexually assaulted by a priest is on inquiry notice of his potential claims against the Archdiocese, as the priest's employer). As the Rhode Island Supreme Court has pointed out in a related context "[t]he plaintiff's certitude of negligence [of a potential defendant] cannot be the deciding factor to determine when the statute of limitations begins to run." *Benner*, 641 A.2d at 338. To postpone the accrual of their causes of action until plaintiff-appellants completed their investigation of all potential liability theories would destroy the effectiveness of the limitations period.

Alternatively, if the plaintiffs' theory is thought of as a sort of discovery rule argument, it still is not persuasive. Plaintiff-appellants contend that a discovery rule is appropriate under the circumstances of this case because at the time the alleged abuse occurred plaintiff-appellants had no reason to suspect that the hierarchy defendants were aware of prior sexual assaults by Frs. Marcantonio and O'Connell. However, the Rhode Island Supreme Court has expressly rejected the extension of a discovery rule to claims against non-perpetrator defendants for damages arising from childhood sexual abuse. *See Kelly*, 678 A.2d at 878. We therefore decline plaintiff-appellants' request.

We turn now to Michael and Stephen Kelly's contention that Father Marcantonio fraudulently concealed the existence of their causes of action against him by convincing them that his sexual advances were part of their religious training in sexuality. On appeal, the Kellys contend that the district court erred by interpreting § 9–1–20 as requiring that a potential plaintiff rely on the "actual misrepresentation." We agree with the district court that reliance is an essential element of the fraudulent concealment tolling provision. The statute requires "fraudulent" concealment, and under Rhode Island law, reliance is an essential element of fraud. *See National Credit Union Admin. Bd. v. Regine*, 795 F.Supp. 59, 70 (D.R.I.1992).

We further agree that the Kellys' alleged reliance on Father Marcantonio's misrepresentations was unreasonable as a matter of law. According to the record, Father Marcantonio's alleged abuse continued for years, and ended only when both Kellys reached the age of twenty. As the district court noted, it is beyond comprehension that an otherwise competent twenty year old adult would continue to believe that Father Marcantonio's sexual

defendants' liability independent of the claims asserted against the priest-defendants. We

address this theory of liability *infra*.

202

advances were part of his religious training. *See Doe v. United Methodist Church,* 673 N.E.2d 839, 844–45 (Ind.Ct.App.1996) (continued reliance by plaintiff upon representations made by defendant that sexual activity was a part of the accepted counseling process was unreasonable as a matter of law); *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 622 A.2d 1388, 1395 (1993) (plaintiff's reliance on priest-defendant's assurances that sexual acts being performed on him were necessary for his spiritual development was unreasonable as a matter of law). We therefore conclude that Father Marcantonio's statements to the Kellys did not rise to the level of fraudulent concealment. Therefore, the Kellys' claims against Father Marcantonio are time-barred under the three-year statute of limitations contained in § 9–1–14(b).

### c. Continuing Tort Theory

█ In a final attempt to avoid the statute of limitations altogether, plaintiff-appellants assert various conspiracy theories against the hierarchy defendants.[6] Under these theories, plaintiff-appellants attempt to articulate a legal basis for holding the hierarchy defendants independently liable for damages arising from the alleged sexual abuse. The essence of these claims is that the hierarchy defendants conspired, after the fact, to conceal the alleged acts of sexual abuse perpetrated by Frs. Marcantonio and O'Connell. Because this alleged conspiracy continues to the present day, plaintiff-appellants contend that the period of limitations on their claim has not even begun to run.

The fatal weakness of this theory, however, is that none of these conspiracies was even remotely asserted in any of plaintiff-appellants' complaints.[7] Ultimately, plaintiff-appellants' complaint merely alleges that the hierarchy defendants failed to come forward with information concerning alleged sexual assaults by Frs. Marcantonio and O'Connell.

Finally, even assuming arguendo that the actions of the hierarchy defendants did amount to criminal acts under the various theories asserted by plaintiff-appellants, we conclude that such claims would still be time-barred. It is § 9–1–2 that enables plaintiff-appellants to assert their criminal conspiracy theories as civil causes of action. However, even though plaintiff-appellants seek relief under § 9–1–2, the nature of their claims still arises out of the alleged sexual abuse perpetrated by the priest-defendants. Plaintiff-appellants seek damages for their sexual abuse—not for any alleged conspiracy or cover-up by the hierarchy.[8] Thus, the limitation period

---

**6.** Plaintiff-appellants' conspiracy theories are a bit unclear. At a hearing on a Fed.R.Civ.P. 56(f) motion for further discovery, counsel for plaintiff-appellant articulated ten different conspiracy theories: conspiracy to commit sexual assault, conspiracy to aid and abet the commission of sexual assault, conspiracy to employ a minor for unlawful purposes, conspiracy to commit abominable and detestable crimes, conspiracy to transport a minor for indecent purposes, conspiracy to contribute to the delinquency of a minor, conspiracy to commit misprision of a felony, conspiracy to harbor a criminal, conspiracy to compound a felony, and conspiracy to intimidate witnesses and victims. As the district court observed, the first six theories are clearly based on the contention that the hierarchy defendants conspired with the priest-perpetrators, prior to the acts of sexual abuse, for the purpose of committing that abuse. However, as noted *supra,* plaintiff-appellants have failed to present any evidence in support of this contention. The other four theories are based on acts that allegedly took place after the commission of the alleged acts of sexual abuse. We address these theories to determine whether plaintiff-appellants can successfully avoid the statute of limitations bar.

**7.** We note that plaintiff-appellants amended their complaint three times. They clearly had ample opportunity to include these conspiracy theories.

**8.** Indeed, § 9–1–2 provides that "[w]henever any person shall suffer any injury to his or her person ... *by reason of* the commission of any crime or offense, he or she may recover his or her *damages for such injury in a civil action* against the offender...." R.I. Gen. Laws § 9–1–2 (emphasis added). The plain language of the statute thus requires a causal

set forth in § 9–1–14(b) remains the applicable limitations period. *See Lyons v. Town of Scituate*, 554 A.2d 1034, 1036 (R.I.1989) (where plaintiff's claim for damages under § 9–1–2 arose out of an alleged assault and battery, appropriate limitations period was that applicable to "injuries to the person" set forth in § 9–1–14(b)). As discussed *supra*, plaintiff-appellants' claims for damages arising from their sexual abuse are time-barred under § 9–1–14(b).

### d. Other Tolling Theories

 In their brief, plaintiff-appellants briefly mention a number of other tolling theories, including equitable estoppel, public policy, duress, and undue influence. Plaintiffs complain that theses theories were not properly before the district court when it granted summary judgment. Specifically, plaintiffs claim that they did not have ample opportunity to fully discover and address these other tolling theories, and that the district court abused its discretion in denying their Fed.R.Civ.P. 56(f) motion for additional discovery. We disagree.

As this court has stated, "[a] plaintiff's speculative assertions that the defendant has unspecified facts in its possession necessary for the plaintiff to develop its legal theories ... are entirely inadequate to extract the balm of Rule 56(f)." *C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41, 45 (1st Cir.1997) (internal quotation marks omitted). Plaintiff-appellants have failed to specify any material evidence in support of these theories that they would likely uncover if given additional time for discovery. Accordingly, the district court acted well within its discretion in denying their Fed.R.Civ.P. 56(f) motion.

connection between the alleged crime and the claimed injury. Thus, to the extent plaintiff-appellants are asserting a claim under § 9–1–2 for an alleged cover-up, their claim also

### CONCLUSION

Based on the foregoing, the district court's grant of summary judgment in favor of defendant-appellees is **affirmed.**

fails because of the lack of any nexus between the alleged cover-up and the injuries (and damages) that they claim.