DECISION
Plaintiff Mary Ryan was seventeen years old in 1978 when Msgr. Louis W. Dunn began to sexually molest her. Those sexual advances continued until she was twenty-one years old, the last episode occurring on June 7, 1982. As a result of that criminal conduct, Dunn was indicted and ultimately convicted of first degree sexual assault. State v. Dunn,726 A.2d 1142 (1999). Plaintiff testified at Dunn's trial, and she recounted his various transgressions with clarity.
Dunn, who died in April of 2001, was among several Rhode Island clerics who sexually molested their parishioners. Ultimately, thirty-eight civil actions, including the Ryan case, were filed by or on behalf of parishioners against twelve perpetrator clerics, as well as against non-perpetrator defendants, such as those named in this action (hereafter the "defendants" or the "Hierarchical Defendants"). Eventually, all thirty-eight cases were assigned by the Presiding Justice to a single judge (Israel, J.) to facilitate their management. In March of 2002, after Judge Israel had retired, the cases were re-assigned to this Court.
This Court's initial review of the numerous cases disclosed that in a great many instances, including the Ryan case, statute of limitations defenses might pose significant impediments, absent a viable tolling theory. The Court's review also disclosed that discovery efforts were, in large part, at an impasse, and that dialogue, if any, among and between counsel had become uncommonly contentious.
On several occasions this Court urged the parties to engage in settlement and/or mediation proceedings in an effort to resolve what had become one of the most protracted litigations of its kind in this country. After summer-long mediation in 2002, through Commonwealth Mediation in Brockton, Massachusetts, all of the cases except the Ryan action were resolved, netting the settling plaintiffs $13.5 million dollars.
Mary and Thomas Ryan did not participate in that settlement and chose, instead, to pursue their actions against the Hierarchal Defendants, notwithstanding a potential statute of limitations impediment that loomed. Further problems arose when the Ryans and their counsel became ensnared in personal entanglements, to the point that counsel, with the Ryans' consent, withdrew from the case on October 8, 2002.
Concerned that plaintiffs would be bereft of counsel in this litigation, this Court urged them to engage another attorney and granted the plaintiffs five continuances, spanning more than five months, from October 8, 2002 through March 20, 2003, to advise the Court of their progress in securing new counsel. Further, during that extended period, the Court insisted that the Brockton mediators, who had been instrumental in assisting the successful resolution of the other cases, be present at the October 8, 2002 hearing so that the Ryans could consult with them, without the presence of defense counsel, and at least be apprised of their options. The Ryans' discussions with the mediators bore no fruit.
During those extended continuances this Court also extracted from the Hierarchical Defendants their commitment, on the record, to settle the Ryans' claim for as much as $400,000. At the March 20, 2003 hearing, the Ryans not only shunned that overture, they eschewed any desire to engage counsel and elected to proceed pro se. Tr. at 67-68, March 20, 2003.
As of the date of the within Decision, some five additional months since that March 20 hearing, the record still reflects that no attorney has entered an appearance on behalf of these plaintiffs, and they have filed all of their numerous pleadings pro se. Thus, these plaintiffs have had almost a year within which to engage new counsel and have not done so. Accordingly, this Court necessarily concludes that the plaintiffs' continued pursuit of this action pro se is by design, and not by accident or for lack of other able and available counsel.
Having rejected the defendant's substantial financial offer to resolve the case, and having elected, instead, to pursue their claims, the plaintiffs are now confronted with the impediment that has always loomed large in the defense arsenal: a motion for summary judgment resulting from a time-barred claim that was not filed until December 6, 1995. Accordingly, unless otherwise tolled, the applicable three-year statute of limitations shall have foreclosed their right to institute an action as of June 7, 1985, three years after the last sexual assault by Dunn.
Plaintiffs have advanced all manner of tolling theories in an effort to avoid summary judgment. Further, they suggest that they should not be required to respond to the summary judgment motion absent undertaking further discovery efforts, a suggestion that this Court has earlier rejected on two occasions, see Orders of April 3, and 18, 2003; and, one that the Rhode Island Supreme Court has declined to favor by writ of certiorari. See Orders of May 15 and 22, 2003.
After having reviewed all of the pleadings in this matter, this Court is not at all persuaded that the hoped-for materials that plaintiffs speculate they might find in discovery efforts would in any way assist them in influencing the outcome of this summary judgment motion or in resurrecting their time-barred complaint. See, Simmons Oil Corp. v.Tesoro Petroleum Corp., 86 F.3d 1138, 1144 (Fed. Cir. 1996); ResolutionTrust Corp. v. North Bridge Associates, Inc., 22 F.3d 1198, 1203 (1st Cir. 1994); Equal Employment Opportunity Commission v. American HomeProducts, 144 F. Supp.2d 1084, 1089 (N.D. Iowa 2001).
 * * * * *
When considering a motion for summary judgment under Rule 56, R. Civ. P., the trial court does not weigh the evidence, nor does it pass upon issues of credibility. Doe v. Gelineau, 732 A.2d 43, 48 (R.I. 1999). Although summary judgment orders are entered with a modium of caution, they nonetheless should be granted when there are no disputed issues of material fact, with all reasonable inferences drawn in favor of the nonmoving party, and as well, as is the case here, when the moving party is entitled to prevail as a matter of law. Gelineau, 732 A.2d at 48;DePasquale v. Venus Pizza, Inc., 727 A.2d 683, 685 (R.I. 1999); Bourg v.Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998).
 THE APPLICABLE STATUTE OF LIMITATIONS
It is now settled law that the applicable statute of limitations is three years in civil cases based on child sex abuse brought against non-perpetrators, such as the Hierarchical Defendants in this action. § 9-1-14(b) R.I.G.L; Kelly v. Marcantonio, 678 A.2d 873, 877 (R.I. 1996). That statute mandates that "[a]ctions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after." Because the final sexual assault perpetrated by Dunn occurred on June 7, 1982, the last date by which these plaintiffs could have permissibly instituted their action against these defendants was June 7, 1985. Plaintiffs, however, did not file their complaint until December 6, 1995, more than ten years later. Accordingly, on its face, their complaint plainly was filed well out of time, and it is subject to dismissal absent some lawful theory that tolls the application of the statute of limitations. As set forth below, there is none.
 FRAUDULENT CONCEALMENT
Plaintiffs contend that the defendants fraudulently concealed from them the fact that they had a cause of action against the defendants and that such alleged concealment tolled the statute of limitations. This Court disagrees.
Rhode Island Gen. Laws § 9-1-20 allows tolling of the period of limitations if defendants fraudulently conceal the existence of a cause of action against them. That statute provides:
 If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, said cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence.
In order to establish fraudulent concealment, a plaintiff must show (1) that the defendant made an actual misrepresentation of fact, and (2) that, in making such a misrepresentation, the defendant fraudulently concealed the existence of the plaintiff's cause of action. Smith v.O'Connell, 997 F. Supp. 226, 238 (D.R.I. 1998). A misrepresentation is any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. Stebbins v. Wells, 766 A.2d 369, 372 (R.I. 2001). Mere silence or a failure to volunteer information does not constitute an "actual misrepresentation." Smith, 997 F. Supp. at 238 (citing Kenyon v.United Elec. Ry. Co., 51 R.I. 90, 94, 151 A. 5, 8 (R.I. 1930)). Some express representation or other affirmative conduct amounting to such a representation that could reasonably deceive another and induce her to rely thereon to her disadvantage is required. Id. (citing Caianiello v.Shatkin, 78 R.I. 471, 476-77, 82 A.2d 826, 829 (R.I. 1951)). Moreover, fraudulent concealment tolls the statute of limitations only as to those individuals who made the misrepresentations. Renaud v. Sigma-AldrichCorp., 662 A.2d 711, 714 (R.I. 1995).
Mary Ryan references no affirmative representations made to her by the Hierarchical Defendants concerning any prior or contemporaneous criminal behavior on Dunn's part. At best, she can only suggest that the defendants' collective silence somehow constitutes fraudulent concealment. It does not, as silence does not sufficiently fulfill the requirement of actual misrepresentation.[1]
Furthermore, in order to establish that a misrepresentation was fraudulent, a plaintiff must show that he or she justifiably relied on that misrepresentation in concluding that no cause of action existed.Smith, 997 F. Supp. at 238 (citing Travers v. Spidell, 682 A.2d 471, 472-73 (R.I. 1996)); Kelly v. Marcantonio, 187 F.3d 192, 201 (1st Cir. 1999). Consequently, no fraudulent concealment exists where the claimed reliance is patently unreasonable. Smith, 997 F. Supp. at 238.
In Kelly, the defendant priest told the plaintiffs that his acts of sexual abuse, which continued for several years and ended when the plaintiffs were twenty years old, were part of their religious training. The First Circuit concluded that the defendant's statements did not constitute fraudulent concealment, noting, as the district court had, that it was "beyond comprehension that an otherwise competent twenty-year-old would continue to believe that [the defendant's] sexual advances were part of his religious training." 187 F.3d at 201-02. In the instant case, Mary Ryan states that Dunn had told her that she had been sent by God to heal his sexual difficulties, and that God would harm her if she told anyone of his sexual advances. Although a child of tender years might be lured into believing such an obvious fabrication, it is patently unreasonable for a 21-year-old competent adult to be so inveigled.
In similar fashion, she also suggests that the doctrine of equitable estoppel should toll the statute of limitations because Dunn misrepresented himself to her as a man of high morals and as a direct conduit to God; that it was reasonable for her to rely on that misinformation; and further, that the Hierarchical Defendants endorsed such misrepresentations which she relied upon to her detriment.
In order to establish the doctrine of equitable estoppel, "[t]here must be a showing of an express representation or other affirmative conduct which amounts to a representation that could reasonably deceive another and induce a reliance that would work to the disadvantage of the individual relying upon the representation." Gross v. Glazier,495 A.2d 672, 674 (R.I. 1985) (emph. added). Application of equitable estoppel requires more than inaction or silence by a defendant who has no duty to speak or act. Id. at 673. Additionally, the burden of proving an estoppel claim is on the party asserting it. Violet v. Travelers ExpressCo., 502 A.2d 347, 350 (R.I. 1985).
Mary Ryan's alleged reliance upon these other disingenuous assertions by Dunn is just as unreasonable as her claim that she justifiably relied upon Dunn's asseverations that she was a missive from God sent to Dunn to heal him sexually. See Wolf v. S. H. Wintman Co., 92 R.I. 470, 473-474,169 A.2d 903, 905 (R.I. 1961) (holding that it must have been reasonable for the plaintiffs to rely on the conduct of the defendants in order to assert the theory of equitable estoppel); see Doe v. United MethodistChurch, 673 N.E.2d 839, 844-45 (Ind.Ct.App. 1996) (cited with approval by the First Circuit in Kelly, 187 F.3d at 201), wherein the Indiana Court held that continued reliance by that plaintiff upon representations made by the defendant that sexual activity was a part of the accepted counseling process was unreasonable as a matter of law. Further, the plaintiff offers no evidence that the Hierarchical Defendants made any such representations to her that would have reasonably caused her to have delayed filing her complaint for more than a decade after Dunn's last sexual assault.
 AIDING AND ABETTING
The plaintiffs additionally suggest that these defendants somehow aided and abetted Dunn in his sexual assaults upon Mary Ryan. Such an assertion is without merit and, in any event, has no effect on any tolling theory claimed by the plaintiffs.
In the first place, Judge Israel ruled that no plaintiff in these actions could prevail unless that plaintiff could demonstrate, inter alia, that a Hierarchical Defendant intended that a perpetrator priest commit sexual assaults upon a parishioner. Heroux v. Carpenter et al., C. A. 92-5807, Jan. 23, 1998 (Israel, J.). It is axiomatic that an aiding and abetting theory cannot survive unless the defendant shared in the criminal intent of the principal, and that the defendant willfully participated in it as he would in something he himself wishes to bring about. State v. Medeiros, 599 A.2d 723, 766 (R.I. 1991); State v.Leuthavone, 640 A.2d 515, 521 (R.I. 1994); see Curtin v. Lataille,527 A.2d 1130, 1132, (R.I. 1987) (Rhode Island law requires the same showing from a plaintiff seeking contribution from a joint tortfeasor in a civil case as that required for imposing culpability on an aider and abettor in a criminal action). No plaintiff in this litigation, including this case, has ever alleged that any Hierarchical Defendant ever intended that a priest perpetrate sexual assaults upon parishioners.
Even if the plaintiffs' oeneric aiding and abetting allegation could somehow be permissibly claimed, it would in no way toll the applicable three-year statute of limitations contained within § 9-1-14(b). SeeKelly v. Marcantonio, 678 A.2d 873 (R.I. 1996); see Kelly, 187 F.3d at 196 (§ 9-1-51 cannot be retroactively applied to revive claims previously time-barred as of July 25, 1993).
 CONSPIRACY
The plaintiffs also untenably seek to toll the running of the statute of limitations by alleging conspiracy theories among the Hierarchical Defendants. A conspiracy is a combination of two or more persons to commit an unlawful act, or to perform a lawful act for an unlawful purpose. State v. Mastracchio, 612 A.2d 698, 706 (R.I. 1992). A conspiracy is, in effect, a partnership in a criminal venture, wherein the alleged co-conspirators specifically intend that their conduct, or the results of their conduct, be criminal in nature. If the plaintiffs are suggesting that the Hierarchical Defendants conspired with Dunn so that he could criminally assault Mary Ryan, such an argument is, as set forth above in the context of their aiding and abetting contention, wholly unavailing.
To the extent that the plaintiffs are otherwise claiming that these defendants conspired among and between themselves to obfuscate or shroud Dunn's criminal transgressions (i.e., misprision of a criminal offense), such a claim is likewise without merit, because there is absolutely no causal connection between the Hierarchical Defendants' alleged concealment of Dunn's assaults (if any such alleged concealment even occurred) and the harm that Dunn visited upon Mary Ryan. See Kelly, 187 F.3d at 203. In other words, the existence of an alleged conspiracy to cover up Dunn's abuse did not cause the sexual abuse and injury to her. Rather, her injuries were caused directly by Dunn's purposeful sexual assaults upon her, and not at all because of any concerted or conspiratorial actions by the Hierarchical Defendants.
In addition, a cause of action for civil conspiracy does not wait to accrue until the last overt act of any member of the conspiracy in furtherance of the conspiracy. Instead, as the First Circuit has held, a cause of action for each invasion of the plaintiff's interest arises at the time of that invasion, and the applicable statute of limitations begins to run from that point. Kadar Corp. v. Milbury, 549 F.2d 230, 234 (1st Cir. 1977). In civil conspiracy actions the injuries and damages flow from the overt acts and not from "the mere continuance of a conspiracy." Id. (quoting Hoffman v. Halden, 268 F.2d 280, 303 (9th Cir. 1959). Therefore, "the statute of limitations runs from the overt act alleged to have caused the damage." Id. at 235 n. 4 (quoting Hoffman, 268 F.2d at 302); see Nieves v. McSweeney, 241 F.3d 46 (1st Cir. 2001) ("the mere fact of a [cover-up] conspiracy does not toll the statute of limitations with respect to earlier clear-cut violations that have not been concealed from the plaintiff").
 DISCOVERY OF HARM DONE
Plaintiffs also seek unavailing support for their tolling argument from § 9-1-51, R.I.G.L., a statutory tolling provision enacted in 1993 for actions based on childhood sexual abuse. That statute provides:
 (a) All claims or causes of action based on intentional conduct brought by any person for recovery of damages from injury suffered as a result of childhood sexual abuse shall be commenced within seven (7) years of the act alleged to have caused the injury or condition, or seven (7) years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by the act, whichever expires later. . . . (d) For purposes of this section, "child" means a person under the age of eighteen (18) years.
Mary Ryan asserts that she did not comprehend the impact of the sexual assaults until March, 1994, when she began therapy. She therefore claims that she is entitled to the benefit of this tolling provision because her cause of action purportedly did not begin to accrue until she discovered the existence of her injury in 1994. Her reliance on § 9-1-51 is misplaced.
Section 9-1-51 does not apply retroactively to revive claims previously time-barred as of July 25, 1993, the effective date of the legislation.Kelly, 187 F.3d at 196 (citing Kelly, 678 A.2d at 882-83). Moreover, the three-year statute of limitations contained in § 9-1-14(b), not § 9-1-51, applies in cases of childhood sexual abuse when claims are brought against non-perpetrator defendants. Kelly, 678 A.2d at 877. Accordingly, plaintiffs' reliance on § 9-1-51 is misplaced.
Even if the plaintiffs could somehow find a method to apply § 9-1-51
to the present case, where none presently exists, their claim would still be barred by the statute of limitations because it was not objectively reasonable for them to remain unaware of a cause of action until March of 1994. This tolling statute is permissibly invoked only when the fact of the injury is unknown to the plaintiff when it occurs. Mills v. Toselli,819 A.2d 202, 205 (R.I. 2003). When such circumstances arise, "the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct." Id.
(quoting Martin v. Howard, 784 A.2d 291, 299 (R.I. 2001)).
The reasonable diligence standard is based on two considerations: (1) the perception of a reasonable person placed in circumstances similar to the plaintiff's, and (2) an objective assessment of whether such a person should have discovered that the defendant's wrongful conduct had caused him or her to be injured. Id. "If a reasonable person in similar circumstances should have discovered that the wrongful conduct of the defendant caused her injuries as of some date before the plaintiff alleged that she made this discovery, then the earlier date will be used to start the running of the limitations period." Id. (quoting Martin, 784 A.2d at 300). Additionally, it is not necessary for the entire theory of the case to be immediately apparent to a plaintiff before the statute of limitations begins to run. Kelly, 187 F.3d at 201.
In the present case, from any objective vantage point, a reasonable person of twenty-one years of age would surely have known that Dunn's forced sexual actions constituted actionable, wrongful conduct. See Doev. Creighton, 786 N.E.2d 1211, 1215 (Mass. 2003) (stating that it was not objectively reasonable for the plaintiff in an "overtly abusive relationship that produced an immediate and obvious injury" to fail to realize that she had been injured); see ABC v. Archdiocese of St. Paul,513 N.W.2d 482, 487 (Minn. Ct. App. 1994) (citing evidence that the plaintiff discussed her relationship with the defendant-priest with others and that she cried after the sexual acts took place, as factors pointing to a conclusion that she should have known that she was a victim of sexual abuse); accord K.B. v. Evangelical Lutheran Church in America,538 N.W.2d 152, 154-56 (Minn. Ct. App. 1995); Roe v. Archdiocese of St.Paul and Minneapolis, 518 N.W.2d 629, 630 (Minn. Ct. App. 1994).
Mary Ryan was aware at all times that wrongful sexual misconduct was being perpetrated by Dunn. When deposed, she described an incident that occurred when she was seventeen at the rectory with Dunn. She said that she awoke from a rest in his suite and realized that he was assaulting her, she began to cry and she was very upset. She also testified at Dunn's criminal trial that when she was twenty-one, Dunn had sexually assaulted her at her apartment, that she became afraid, that she was pushing his chest away, and that she was trying to close her legs. From any objective and reasonable view, it cannot be said that she was somehow unaware of Dunn's wrongful sexual advances and assaults at the time they occurred.
Even assuming that she somehow did not comprehend the wrongfulness and harmful activities that Dunn was perpetrating upon her — an unrealistic and unreasonable assumption from any objective vantage point — the applicable three-year statute of limitations would not be tolled. As instructively stated in E.J.M. v. Archdiocese ofPhiladelphia, 424 Pa. Super. 449, 460-61, 622 A.2d 1388, 1394 (1993) (cited authoritatively by the First Circuit in Kelly, 187 F.3d at 201):
 This is simply not a case where the plaintiff, despite the exercise of objectively measured reasonable diligence, could not know of his injury and its cause within the limitations period. Appellant admits that he knew the abuse was occurring and who was inflicting it, both when it happened and throughout the eight years after the abuse ended and before appellant sued. . . . [A]ppellant need not have known that what was happening to him was "abuse," i.e. was wrongful, or precisely what type of psychological or emotional harm he would suffer as a result. Once he knew what was happening and who was doing it, he had the duty to investigate these questions and to institute suit within the limitations period. (Emph. in original.)
 * * * * *
None of the plaintiffs' other assertions (e.g., alleged defamation by the Hierarchical Defendants, and a suggestion that they were somehow denied her right of religious freedom) has any bearing on their contention that the applicable three-year statute of limitations should be tolled in this case. The only avenue that might remotely have otherwise existed to support a possible tolling theory would have been an allegation that she suffered from "unsound mind." See Austin v. Carden,818 A.2d 662, 664 (R.I. 2003). These plaintiffs, however, have expressly shunned and steadfastly denied any such notion. (Ryan Affidavit, pp. 2, 5; June 6, 2003).[2]
 THOMAS RYAN'S CLAIM FOR LOSS OF CONSORTIUM
Section 9-1-41(a), R.I.G.L. generally affords a separate legal remedy to the spouse of a person injured by the tortious conduct of another. Such a claim for loss of consortium, however, depends entirely upon the success of the spouse's underlying tort claim. Desjarlais v. USAA Ins.Co., 824 A.2d 1272, 1277 (R.I. 2003) (citing Sama v. Cardi Corp.,596 A.2d 432 (R.I. 1990)). Further, a claim for loss of consortium is subject to the same statute of limitations as that which is applicable to the injured party's claims. Id. Because Mary Ryan's claims are time barred, Thomas Ryan's claim for loss of consortium must similarly fail.
Indeed, it is questionable whether Thomas Ryan may even plausibly assert a claim for loss of consortium resulting from Dunn's sexual assaults upon Mary during 1977-1982, because she and Thomas did not wed until 1984.
 CONCLUSION
For all of the foregoing reasons, the motion for summary judgment by the Hierarchical Defendants is granted.
[1] Although silence does not constitute actual misrepresentation, it may sometimes qualify as fraudulent concealment if a fiduciary relationship creates a duty to disclose information pertinent to the interests of a party who places a special confidence in another. Stebbinv. Wells, 818 A.2d 711 (R.I. 2003). The party seeking to establish a duty to disclose based on a claim of fiduciary relationship must, however, provide clear and convincing evidence of the existence of such a relationship. Clark v. Bowler, 623 A.2d 27, 29 (R.I. 1993). The United States District Court for the District of Rhode Island has concluded that it will not infer the existence of such a fiduciary relationship between parishioners and the diocesan hierarchy. Smith, 997 F. Supp. at 239-40 (D.R.I. 1998). These defendants did not counsel Mary Ryan in a fiduciary capacity before, during or after the incidents of Dunn's sexual abuse; and, therefore, it cannot be said that she placed a special confidence in any of them. To the extent that the plaintiff relies upon such fiduciary theory in her fraudulent concealment claim, it is unavailing.
[2] Per the Rhode Island Supreme Court's decision in Ryan v. RomanCatholic Bishop of Providence, 787 A.2d 1191, 1195 (R.I. 2002), this Court has examined, in camera, the Dunn Presentence Report ("PSR"). In its decision the Supreme Court noted that the "plaintiffs sought to obtain the PSR because they believed that defendant may have told the investigator that the Church knew that he had sexually abused others in the past and had transferred him because of that behavior." Id. at 1193. A review of that PSR, however, discloses no such statement as contemplated by these plaintiffs. Indeed, Dunn's statements to the presentence investigator are entirely antithetical to plaintiffs' expectations. At page 4 of the PSR the investigator states: "While defendant described these liaisons as consentual (sic) and disowned any attempt to take advantage of these women, he conceded he kept his relationships secret. He hid his actions from the church Hierarchy, fellow priests and parishioners to avoid scandal and preserve his clerical reputation." Accordingly, nothing is contained in the PSR that would in any way support plaintiffs' tolling theories in this case.