Barbara F. NICOLO, Plaintiff, Appellant,

v.

PHILIP MORRIS, INC., Liggett Group, Inc., and Liggett & Myers, Inc., Defendants, Appellees.

No. 99–1497.

United States Court of Appeals, First Circuit.

Heard Nov. 2, 1999.

Decided Jan. 6, 2000.

Michael T. Eskey with whom Lauren E. Jones was on brief for appellant.

Paul E. Nemser with whom Thomas J. Griffin, Jr., John B. Daukas, and David A. Wollin, were on brief for Philip Morris, Inc.

Douglas J. Emanuel for Liggett Group, Inc. and Liggett & Myers, Inc.

Before BOUDIN, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

COFFIN, Senior Circuit Judge.

Plaintiff, an addicted cigarette smoker for most of her adult life, had contracted, by 1988, a series of smoking-related illnesses, including asthma, emphysema, and chronic obstructive pulmonary disease (COPD). Five years later, she was diagnosed as having lung cancer. She brought suit against the Chesterfield and Marlboro cigarette companies, Liggett Group, Inc., Liggett & Myers, Inc., and Philip Morris, Inc., within the statutory limitations period of three years from the diagnosis of cancer but not within three years of the onset of the earlier respiratory illnesses.

The district court for the District of Rhode Island granted summary judgment for defendants, holding that all claims were barred by the running of the statutory limitations period. The major issue on appeal concerns the time of accrual of plaintiff's cause of action based on her lung cancer, specifically, whether the record justifies judgment as a matter of law that the cancer ultimately diagnosed must be considered as embraced within and reasonably foreseeable from the earlier symptoms.

This is a case based on diversity jurisdiction. Our review of Rhode Island law and the medical record in this case persuades us that a genuine question of material fact exists, which precludes summary judgment, namely whether cancer was so clearly foreseeable by a person exercising reasonable diligence that she should have filed her complaint within three years of the time when she was diagnosed as suffering a series of significant respiratory diseases. We have not found merit in plaintiff's other arguments.

## I. *Factual Background*

The facts present an all too familiar, poignant history. Plaintiff, sixty-two years old when she filed suit in 1996, had begun smoking at age fifteen. By the 1960s her husband and her doctors asked her to quit. She tried unsuccessfully. In the 1970s she resorted to hypnosis and acupuncture. Late in the decade she was experiencing difficulty in breathing and circulatory problems with her feet. In the early 1980s, she tried nicotine gum and began taking medication. She then knew she was "hooked" on cigarettes. Between 1980 and 1985 she had two operations to remove benign polyps from her vocal cords. By May 1988, she had been diagnosed with and was being treated for asthma, emphysema, and COPD. She also suffered an apparent heart attack in 1988. In 1988 and 1989, she underwent two back surgeries. In 1991 or 1992 she tried a nicotine transdermal patch to help her quit; this failing, she attempted to join a counseling program but was not accepted. In November 1993, she was scheduled for a third back surgery. A preoperative chest x-ray revealed lung cancer. Immediately after the operation, she succeeded in permanently quitting smoking.

## II. *Procedural History*

On September 16, 1996, plaintiff brought suit. Her amended complaint set forth four grounds for recovery: (1) manufacturing and selling known dangerously defective products containing addictive and carcinogenic substances (strict liability); (2) negligently making and selling cigarettes posing a health threat; (3) breaching an implied warranty that the purchased cigarettes were fit for human consumption; and (4) under the rubric of "fraudulent misrepresentations," knowing that nicotine is addictive and purposefully increasing the level of nicotine to increase its addictive effect, while denying such effect, concealing pertinent research, and disseminating favorable advertising. She sought both compensatory and punitive damages.

Defendants moved for summary judgment, primarily asserting the bar of the statute of limitations. Responsive exchanges from the parties followed. Under R.I. Gen. Laws § 9–1–14(b), an action for personal injuries "shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after." Plaintiff, who does not seek damages for her earlier illnesses, contends that her cause of action for cancer did not accrue until she was diagnosed with that disease in November 1993. Within three years of this date, in September 1996, she filed her complaint. Defendants assert that by 1989, being afflicted with asthma, emphysema, and COPD, suffering from "totally disabling respiratory illness, [plaintiff] knew all she needed to know and should have brought suit." Not having done so, argue defendants, plaintiff is barred by the running of the statutory period.

## III. *The District Court Decision*

The district court began its analysis by reciting the generally applicable Rhode Island law governing the time of accrual of a cause of action, namely, " 'the time of injury,' " citing *Renaud v. Sigma–Aldrich Corp.*, 662 A.2d 711, 714 (R.I.1995) (quoting *Plouffe v. Goodyear Tire & Rubber Co.*, 118 R.I. 288, 373 A.2d 492, 495 (1977)). It then acknowledged the supplementation of this rule with a "discovery rule" defining the accrual of certain causes of action as a time when a plaintiff could have discovered

in the exercise of reasonable diligence that he or she was injured as a result of defendant's conduct.

The court invoked the primary line of Rhode Island cases in this regard, which began with *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968). In that case, the Supreme Court of Rhode Island adopted a discovery rule for medical malpractice claims. *See id.* at 753. Under such a rule, "the statute of limitations does not commence until the plaintiff discovers, or in the exercise of reasonable diligence, should have discovered, that he has sustained an injury as a result of the physician's negligent treatment." *Id.* at 751. In *Lee v. Morin,* 469 A.2d 358 (R.I.1983), the court extended the reach of the rule, applying it to actions for injuries to real property, holding that a claim for faulty construction was timely filed because the limitations period commenced at the time when the problem was discovered rather than when the construction occurred. *See id.* at 360–61 ("The rationale for this [rule] is that a person have a reasonable opportunity to become cognizant of an injury."). The court again addressed the discovery rule's scope in *Anthony v. Abbott Laboratories,* 490 A.2d 43 (R.I.1985), and decided to apply a discovery rule to actions for drug product liability. *See id.* at 46 ("[I]n a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time, the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer.").[1]

The district court then cited another cigarette product liability case decided by a judge within the same district, *Arnold v. R.J. Reynolds Tobacco Co.,* 956 F.Supp. 110 (D.R.I.1997). This was a case in which a plaintiff was diagnosed with COPD in 1988 but did not bring suit for this condition until 1995. The court, applying the latent injury discovery rule enunciated in *Wilkinson,* held that "a cigarette product liability cause of action does not accrue until the plaintiff has knowledge, or reasonably should have knowledge, of an injury and a possible causal connection between the injury and the plaintiff's use or exposure to cigarette smoke." *Id.* at 115. For seven years, plaintiff had knowingly suffered from COPD. *See id.* at 112. In that case, however, COPD had not been followed by cancer.

Next, the district court characterized plaintiff's argument as claiming that each different manifestation of an ill effect from smoking constituted a separate and discrete injury. It observed that courts generally have held that the statutory period begins to run "at the time of the initial injury even though the full magnitude of the harm [does] not become apparent until later." In support of this proposition, the court cited three cases. The first was a case involving the evolution of HIV to AIDS, *Nelson v. American National Red Cross,* 26 F.3d 193 (D.C.Cir.1994), in which the court held that the discovery of HIV infection in the plaintiff's blood signaled the start of the limitations period for an AIDS claim against a hospital and blood supplier. *See id.* at 198. The second involved damages resulting from a specific device, *Gagnon v. G.D. Searle & Co.,* 889 F.2d 340 (1st Cir.1989), in which this court held that the plaintiff's physical symptoms upon the removal of an intrauterine contraception device should have alerted her to her injury and thus triggered the accrual of her tort claims against the manufacturer. *See id.* at 343. In the third case, *Joyce v. A.C. and S., Inc.,* 785 F.2d 1200 (4th Cir.1986), a federal court reluctantly applied the severe Virginia rule that accrual of a claim occurs at the time of an injury, "however slight," and held that a

---

1. In a recent case, not cited by the district court, *DiPetrillo v. Dow Chemical Co.,* 729 A.2d 677 (R.I.1999), the Rhode Island Supreme Court applied a discovery rule to a worker's claim for product liability from a cancer-causing herbicide. *See id.* at 680.

claim of asbestosis accrued when pleural thickening in the lungs was discovered, even though such pleural thickening remained asymptomatic for as long as eleven years. *See id.* at 1205.

The district court, without adopting such a rule, concluded with its holding and rationale in the following language:

> There may be a basis for arguing that a new cause of action accrues upon manifestation of a separate and distinct injury that is unrelated to the initial injury and could not have been anticipated as a consequence of that injury. However, even if that argument has merit, it does not assist the plaintiff in this case. Nicolo's initial injury and all of its sequelae consist of impairments to and diseases of her respiratory system.... By 1989, she had become totally disabled by asthma, emphysema and COPD, all of which doctors told her were attributable to smoking. In light of those facts, the development of lung cancer was a readily foreseeable, if not inevitable, consequence of her initial injury and continued smoking. Therefore, her cause of action clearly had accrued at that time.

### IV. *Analysis*

#### A. *Preliminary Issues*

We preface our substantive analysis with consideration of three framework issues: our standard of review, choice of law, and the possible forfeiture, or procedural default, by plaintiff of the major issue concerning the accrual of a cause of action based on cancer.

■ The decision being appealed is a grant of summary judgment to defendants. We review the district court's decision *de novo. See Preferred Mut. Ins. Co. v. Travelers Cos.,* 127 F.3d 136, 137 (1st Cir. 1997). This means that we take all facts and reasonable inferences therefrom favorably to plaintiff, *see Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169, 1171 (1st Cir.1988); that we overlook conjectural allegations, conclusory assertions, and even

inconsequential evidence, *see Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990); but that if we find that the state of evidence reveals a genuine issue of material fact as to the existence of an element necessary for the issuance of judgment to the movant, the matter must be submitted to a trier of fact, *see Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 934 (1st Cir.1987). In short, we must review the record and ask if a fact finder could rationally reach a different conclusion from that of the court.

■ Because this case rests on diversity jurisdiction, we must look to Rhode Island law for guidance. Should there be no statute or case precedent squarely on point, we must look for analogous situations. If we find no compelling guidance, we may seek the aid of the Supreme Court of Rhode Island by certifying a question to it. We are reluctant, however, to impose on another court at such a late stage in already attenuated proceedings.

The only preliminary issue provoking much discussion from the parties is whether plaintiff preserved the issue of whether her cancer was part of the initial "single injury" or was a separate "second injury." Defendants first raise a burden of proof objection, arguing that plaintiff failed to carry her burden to establish that her cancer was separate and distinct from her earlier ailments. If we were to assume that Rhode Island would adopt the extreme versions of a "single injury" concept, i.e., that when the initial injury, however slight, is sustained, a cause of action then accrues for all subsequent consequences, defendants' point would have more force. But, as we shall discuss, we think Rhode Island would not apply this principle to cases involving prolonged smoking and later discovered lung cancer, but, instead, would apply a discovery rule based on reasonable foreseeability of the disease from current symptoms. Given that premise, the question facing us is whether, on motions for summary judgment, there is enough evidence in the record countering

foreseeability to create a genuine issue of fact. If, of course, there is no such evidence, then plaintiff would pay the price, having the ultimate burden of persuasion. *See, e.g., Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 929 (1st Cir.1983). But if there is such evidence, no matter by whom produced, summary judgment should not issue.

■ Defendants also claim that plaintiff did not properly raise her separate injury argument in the district court. We trace briefly this issue's footprints in the record. In response to defendants' statute of limitations defense in their motions for summary judgment, plaintiff identified, as one of several issues of fact, her claim that her lung cancer occurred within three years of suit stating:

> It is undisputed that Barbara Nicolo was diagnosed with lung cancer in November, 1993. It is also undisputed that for her no prior lung cancer awareness existed. This lawsuit arises, in part, from Barbara Nicolo's lung cancer. The suit was filed on September 16, 1996, well within the three year statutory period from November, 1993. It is obvious on the face of these facts that Barbara Nicolo's claim for lung cancer is not barred by the Statute of Limitations.

Defendants devoted two-thirds of a fourteen page reply memorandum to an effort to demonstrate that the "single cause of action" concept governed the case and that under Rhode Island law, "once plaintiff knew she suffered 'injury' as a result of her cigarette smoking, the statute of limitations began to run on all her claims, present and future, and did not begin to run anew every time she developed further 'injuries' from her smoking."

Following this, plaintiff directed a supplemental response to an issue raised by the court, the effect of the 1993 lung cancer diagnosis. She began with the assertion that "clear questions of fact exists [sic] on whether or not the lung cancer is a new and medically uncertain occurrence." She

went on "additionally" to make a continuing tort argument.

Even more important than these exchanges is the fact that the district court, as our quoted extract from its decision reveals, fully understood and grappled with plaintiff's theory of a separate and new cause of action, rejecting it after full deliberation. This is not the kind of "blindsiding" of the court that our raise-or-waive stance aims to discourage. *See, e.g., United States v. Bongiorno*, 106 F.3d 1027, 1034 (1st Cir.1997) (reciting standard rule that issues not raised squarely in trial court cannot be advanced on appeal). We have been cited to no case where we have held that procedural default has occurred on an issue which has been given focused and central consideration by the district court.

We, therefore, conclude that the single vs. separate injury issue has been preserved.

### B. Accrual of Cancer Cause of Action

#### 1. Search for a Fair Standard

■ In conducting our own analysis, we first observe that we have been pointed to no Rhode Island jurisprudence involving latent and delayed cancer resulting from prolonged smoking. We begin with an analysis that leads us to the conclusion that Rhode Island would not follow such a draconian "slight injury" concept of accrual as was reflected in *Joyce*.

It bears noting that, strictly, this proposition is not disputed. The district court, as we have observed, while mentioning this concept, did not adopt it as a ground for decision. Defendants have similarly refrained from arguing that the earliest respiratory ailments suffered by plaintiff signaled the accrual of her cause of action. Indeed, they distinguish both asbestos and non-asbestos cases cited by plaintiff as involving relatively minor injuries and argue that by 1989 plaintiff "knew all she needed to know to bring suit—that she might have

a claim against the Manufacturers for totally disabling respiratory harm."

Nevertheless, the authority of the cases tracing accrual of all causes to an initial minor injury seems to survive in some of the argument on appeal. In any event, were such a rule applied to a latent, long-delayed cancer case, it would place, as other courts have observed, a victim in an impossible position. If he did not sue at the earliest onset of breathing difficulty or emphysema, he would risk being barred from pursuing a remedy for a cancer condition discovered much later. If, on the other hand, he brought suit at such an early stage he would not be able to come forward with the proof of sufficient likelihood of damage from cancer to sustain his cause of action. As for the courts, such a rule would unnecessarily thrust them into obviously premature litigation. As then-Judge Ginsburg wrote in *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C.Cir.1982): "In latent disease cases, this community interest [in balancing the interests of the parties and producing a fair resolution] would be significantly undermined by a judge-made rule that upon manifestation of any harm, the injured party must then, if ever, sue for all harms the same exposure may (or may not) occasion some time in the future." *Id.* at 119.

Moreover, a strict initial-though-slight injury rule would not be consistent with the approach of the Rhode Island Supreme Court in the discovery rule cases that have been cited. For example, in *Wilkinson*, the court was concerned with the manifest unfairness of barring "the enforcement of injury claims brought by a plaintiff who was not, nor could not have known that he was, the victim of tortious conduct because the consequent harm was unknowable within two years of the negligent act." *Wilkinson*, 243 A.2d at 752. In *Lee*, the court set forth its rationale for a manifestation of injury rule of accrual saying that "a person [should] have a reasonable opportunity to become cognizant of an injury." *Lee*, 469 A.2d at 361. In *Anthony*, the court referred to its "conscious balancing of policies" to prevent "the unexpected enforcement of stale claims with the opportunity of a person to have her day in court to vindicate those rights that have been violated but have remained undiscovered or undiscoverable." *Anthony*, 490 A.2d at 46.

We also take note of the willingness of the Supreme Court of Rhode Island to take a realistic approach to the long-established rule against splitting causes of action, not hesitating to carve out situations to which this approach should not apply, where its invocation would work an injustice. For example, in *Lemieux v. American Universal Insurance Co.*, 116 R.I. 685, 360 A.2d 540 (1976), the court, recognizing the disparity of interests of a subrogated insurer and its insured, permitted each to seek recovery from a third party in separate suits for property damage and personal injury. *See id.* at 545.

We, therefore, are confident that a Rhode Island court would not deem cancer to be so foreseeably related to the very beginning of plaintiff's respiratory difficulties as to identify that as the time of accrual of her cause of action for cancer. Plaintiff argues for setting the time of medical diagnosis of cancer as the time of accrual. While there may be cases where such a time would be appropriate, it is also possible in the case of a long-time addictive smoker that the progression of illnesses, the presence of symptoms indicative of cancer, the nature of materials read, or discussions with doctors, etc., so point to the likelihood of cancer that it is fair to expect a plaintiff to bring suit and where further delays would impose an untoward burden on a defendant.

It seems to us, as it did to the district court, that a fair balancing of the legitimate interests of the parties lies in a middle position that would not allow a plaintiff to sleep on her rights but would not, in the interests of repose and evidence preservation, severely jeopardize a plaintiff's opportunity to obtain compensation for contract-

ing cancer. The district court's framing of its decision in terms of the ready foreseeability of cancer from the nature and extent of current disabilities appears to us consistent with the Rhode Island Supreme Court's emphasis in *Wilkinson* and *Lee* on the unfairness of barring a plaintiff before he could have become aware of the consequent harm.

This approach also reflects a sensitive and sensible balancing of interests. We first note a number of characteristics of cancer that militate against requiring a possible victim, even though an addicted smoker, to make an early decision to commence litigation. The causes of cancer are various, by no means confined to prolonged smoking. Nor is cancer an inevitable result of such smoking. Often its incidence defies foreseeability. It is quite different from afflictions of shortness of breath, emphysema, or other respiratory difficulties. It is of a different magnitude, often involving the possibility of death. Unlike impairments to breathing, cancer does not lend itself to lay identification. It is most dependent upon medical diagnosis. We can understand the apparent absence of case authority for this approach.

We pursue our search for an appropriate balance by examining the impact on defendants of a middle approach based on foreseeability. We do not anticipate that this would be an open sesame for stale claims. A plaintiff with some awareness of her susceptibility is not likely to sleep on her rights. Moreover, cancer claims remotely connected in time to earlier illnesses run greater risks of failure of proof, because of the very multiplicity of causes of cancer. A defendant is not without weapons to dismantle a specious claim of ignorance. Particularly, looking to the future, we strongly suspect that it will not be an onerous burden on a defendant to prove that a plaintiff was exposed to enough contemporary information about cancer to have reasonably foreseen its likelihood. We should add that this case went to judgment on a sparse record, containing the plaintiff's deposition and medical records. There was no testimony from other witnesses, including medical experts. No evidence is in the record as to any conversations between plaintiff and doctors or others about suspicion of cancer.

In accepting this approach as that which would comport with Rhode Island law, we realize that it points in the direction of fact-intensive analysis. By the same token this introduces unavoidable uncertainty into prediction, litigation, and the attainment of repose. We have, therefore, probed on our own the possibility of linking the time of accrual of a cause of action for cancer to some objectively identifiable stage in the progression of the illness. For example, one might say that once the condition of an addictive smoker has regressed to the stage when she is substantially and permanently disabled, she should be held to know enough to bring suit for present and any subsequent illnesses attributable to her smoking.

On close examination, this approach reveals numerous flaws of its own. We first observe that even this approach does not avoid a case by case inquiry into whether the threshold stage of seriousness has been reached. We then realize that the same problem of anticipatory litigation presents itself: a plaintiff, however reluctant to engage in a premature lawsuit, is faced with a "sue or lose" dilemma before having reliable knowledge of her likelihood of contracting cancer. Paradoxically, instead of serving the truth-enhancing, evidence-preserving function of statutes of limitation, this approach forces resolution before the development of relevant reliable medical or scientific evidence.

Even were such a plaintiff able to prove by a sufficient quantum of evidence the likelihood of incurring cancer, her damages would be subject to substantial discounting based upon a range of contingencies regarding the probability of her contracting the disease. The plaintiff would also be subjected to several other burdens. She would be under pressure—with the conse-

quent expense—to search for experts to maximize the seriousness of her prognosis, as well as pressure to delay the progress of her suit to take advantage of subsequent deterioration. Such a series of disadvantages jeopardizes the societal interest in affording fair compensation to victims. To the extent that a "sue or lose" rule based on an arbitrarily defined "stage" results in a shielding of a tortfeasor, the community interest in deterrence is also compromised.

### 2. *Application of Standard*

While we are satisfied that the test both we and the district court have articulated reflects a fair balancing of interests, the district court went further, holding that the record was bereft of any genuine issue of material fact and granted summary judgment for defendants.

■ We acknowledge that there may well be some cases in which one could say that the reasonable foreseeability of cancer was not a genuinely disputed fact at a period antedating the limitations period. Generally, however, we suspect that the issue is heavily fact dependent. In this case, on this record, we cannot say that the known conditions affecting plaintiff in 1989 so pointed to a likely development of cancer that she should have brought suit. We rehearse our findings from our scrutiny of the record.

We begin by noting that the court, as we have observed, concluded that by 1989 plaintiff had become totally disabled from asthma, emphysema, and COPD, all derived from smoking. Defendants repeatedly assert that by 1989 plaintiff was suffering from totally disabling smoking-related respiratory disease. As we shall explain, these statements considerably overstate the record.

The medical record for 1988 and 1989 is replete with doctors' examinations, tests, operations, and evaluations. In April 1988, a myelogram was performed as well as CT scanning by Dr. Birkenfeld, revealing "severe spinal stenosis" or narrowing of the space in two lower back vertebrae which allowed spinal nerve passage. Numbness and pain in both legs, hindering plaintiff's walking, and bringing her "almost [to] the verge of incapacity," had been progressive over the prior three years.

In May 1988, after being admitted to Carney Hospital and having a physical examination in which her lungs were found "clear to auscultation," plaintiff underwent an operation on her spine—a lumbar laminectomy, a procedure to remove part of a blockage in the vertebrae. Significantly, before the operation, because of her COPD, plaintiff was given a chest x-ray "for pulmonary clearance" by Dr. Kogianes, which showed only evidence of COPD and mild artery-associated (atherosclerotic) and/or hypertensive heart disease. After the operation, and temporary progress, plaintiff complained again of back and leg pain, but was sent home under conservative treatment. She was administered a postoperative chest x-ray, which was "basically within normal limits."

Almost a year later, plaintiff filed a claim for Social Security disability benefits with the State of Rhode Island Department of Human Services. In support of the claim, plaintiff's physician, Dr. Gilman, reported on an examination he had conducted in January 1989. He reported that plaintiff suffered from the following conditions: overweight; "[l]ungs revealed a few babesia crackles [babesia being parasites from ticks, destructive of red blood cells];" COPD; high cholesterol; numbness in hands and feet; and pulmonary functions registering from 13 percent to 22 percent under "predicted." His diagnosis listed COPD in a continued smoker, hyperlipidemia (excess fat in the blood), a history of spinal stenosis surgery, and neurological symptoms.

In July 1989, plaintiff's disability claim was denied and Dr. Gilman was asked to send a supplementary report in connection with her request for reconsideration. He was advised by a lawyer representing her

before the Board of Appeals that plaintiff had indicated to him "that she is unable to stand, sit or lay in any one position for more than a short period of time, and that she has severe back problems and other related problems and that she is not able to do any sort of gainful activity."

On July 31, 1989, Dr. Gilman reported that plaintiff had recently complained of a sore throat, coughing, and yellow sputum. She was found to have pharyngitis, or inflamation of the pharynx, and was treated with antibiotics. She had been scheduled for a second laminectomy but an electrocardiogram showed more "T-wave inversions" than previously observed, and "pulmonary function tests showed a moderate decrease in flows and volumes." Plaintiff took a treadmill test and, at a mild work load, had no abnormalities of concern. She was advised to "decrease her smoking and discontinue it because of her COPD." Dr. Gilman's "impression" listed COPD, continued smoker, hyperlipidemia with high cholesterol, EKG changes, and a history of prolonged back pain.

From this record, which summarizes all of the medical history, we discern the following. Both in 1988 and 1989 plaintiff was suffering from a number of afflictions. A substantial portion of her ailments were not obviously related to smoking. Plaintiff was overweight, with excess cholesterol and fat in the blood, and particularly suffered pain and numbness in her hands, feet, and lower back, all of which played a significant role in her health problems. As she is quoted by her lawyer, her inability to pursue gainful employment was linked in a major way to these latter problems. Finally, the fact is that plaintiff's disability claim was disallowed.

We therefore cannot say that this record justifies characterizing plaintiff's condition in 1989 as one of total disability from respiratory ailments attributable to smoking. More importantly, we do not think that, as a matter of law, on this record, plaintiff's condition in 1989 so clearly pointed to the onset of cancer such that a lay person could foresee it as likely. Not until the x-ray in November 1993, taken just prior to a planned surgery, was plaintiff's lung cancer revealed. The record does not show that this followed a series of conversations with friends or doctors about the possibility of cancer or of particular books, articles, or media presentations arousing concern. Nor does cancer appear to be linked, as a matter of law, to her prior illnesses. To the contrary, plaintiff was very much in the hands of several doctors, being routinely examined, tested, and evaluated. During the five years prior to her diagnosis her condition was stable. Most critically, she had the assurance given by the two chest x-rays which revealed no hint of cancer. Although we do not pretend to be expert evaluators of medical evidence, no one has suggested that these x-rays should not indicate the absence of cancer. At no time was the possibility of cancer touched upon. On this state of facts, we cannot say as a matter of law that plaintiff in 1988 "knew all she needed to know" and should have filed suit to recover damages for lung cancer. In fact, had she attempted to recover for the likely contraction of cancer at that time, with recent x-rays showing her lungs to be tumor-free, her chance of success would have been greatly diminished.

This record in our view contains sufficient evidence to defeat summary judgment. While plaintiff has the burden to show that her suit was timely, *see Kelly v. Marcantonio*, 187 F.3d 192, 198 (1st Cir. 1999) (stating that plaintiff has burden to show that his claim was filed within statute of limitations due to tolling), defendants, as the movants for summary judgment, have the burden of first establishing that there is no genuine dispute as to any material fact necessary to decision, *see Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997).

We conclude that at this juncture there is at least a genuine issue of material fact as to whether plaintiff's condition immediately before the commencement of the lim-

itations period was such as to require a person acting with reasonable diligence to institute suit seeking damages attributable to cancer.

### C. *Plaintiff's Remaining Arguments*

Plaintiff seeks to cast a wider net than that encompassing her cancer. She asserts a congeries of claims under a section of her complaint entitled "Fraudulent Misrepresentation."

 She argues, first, that defendants' responsibility for selling her an addictive product and their manipulative conduct aimed at increasing her addiction are subject to the expanded discovery principle of *Anthony* under which a cause of action based on use of a drug product does not begin to run until after discovery of both an injury and wrongful conduct of the manufacturer. *See Anthony,* 490 A.2d at 46. Wholly apart from whether Rhode Island would extend this doctrine to cigarette products, its application to such a case as this would mismatch rationale and facts. Its premise as plaintiff points out, "is that a person using a drug product has no reason to suspect from the fact of an adverse effect or injury that … the manufacturer has done anything wrong." But plaintiff knew well of her addiction and that it was caused by defendants. That she did not know the degree of defendants' wrongdoing seems irrelevant. As we said in *Kelly,* "[f]or a cause of action to accrue, the entire theory of the case need not be immediately apparent." *Kelly,* 187 F.3d at 201.

 Secondly, plaintiff makes a slightly different argument based on her intentional tort characterization of her nicotine manipulation claim. Her argument is that this cause of action arose only when plaintiff discovered the intentional nature of defendants' conduct. But the same reasoning that defects plaintiff's claim based on *Anthony* applies here. She knew her addiction was attributable to defendants.

This alone put her on inquiry. The same reasoning disposes of her argument that defendants' fraudulent concealment of their purposeful conduct tolled the running of the statute.

 Thirdly, she advances a continuing tort argument, that her cause of action for nicotine manipulation did not accrue until she stopped smoking. Leaving aside the absence of precedent in Rhode Island, the dispositive answer is that, given plaintiff's knowledge that she had been "hooked" since at least the early 1980s, any subsequent dissimulation or misrepresentation by defendants as to their intent and knowledge bore no causal relation to plaintiffs' condition.

Finally, plaintiff does not charge the district court with any abuse of discretion in refusing to certify questions to the Supreme Court of Rhode Island but suggests that we ought to certify the issues of single vs. separate injury, the application of the *Anthony* discovery rule, and the application of a continuing tort theory. At this late date, however, we are disinclined to delay proceedings further. We prefer to decide the case before us, leaving for the future the authoritative articulation of the law of Rhode Island by its Supreme Court.

We want to underscore that this is a close and difficult case. The problem of applying statutes of limitations in exposure cases, where there may be a substantial delay before symptoms manifest themselves and a series of different symptoms may emerge at different times, has vexed and divided the state courts. Existing statute of limitations doctrine, in the abstract, does not generally provide clear answers to the peculiar problem presented by the long-term exposure issue. A sampling of decisions, a number of them dealing with the problem of asbestos exposure, show that some courts have reached answers that are as "liberal" to plaintiffs as our own—or even more so—while others are far less so.[2]

2. For recent collections of cases highlighting the disparate approaches to the issue, see 63B

The latter decisions, like that of the district court, are primarily motivated by concern about stale claims and liability continuing almost without limit in time. It is certainly possible to conclude that a plaintiff who knows of his or her exposure and also has suffered substantial harm at some other point after the exposure (e.g., COPD) should then bring suit within the statute of limitations period following that harm. The biggest problem with this course is the difficulty of dealing with other potential harms from the same exposure that have not yet manifested themselves and may be unlikely on a percentage basis but are very severe if they occur (e.g., cancer).

Nevertheless, lacking clear guidance from the Rhode Island courts, we have made our best guess based on suggestive Rhode Island precedents, policy, and the general direction in which the case law is tending in other states. The district judge who is more familiar with Rhode Island law has reached a different conclusion, but we are forbidden by Supreme Court precedent from giving weight to this view merely because of the judge's residence. *See Salve Regina College v. Russell*, 499 U.S. 225, 238–40, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The next time this problem arises, however, the district court may want to give further thought to certifying the issue to the state supreme court, assuming the issue is amenable to certification, *see Doe v. Walker*, 193 F.3d 42, 45–46 (1st Cir.1999), and further assuming that there is no intervening clarification by the Rhode Island courts of the law in this area.

The judgment is vacated and the matter remanded to the district court for further proceedings consistent with this opinion.

Am.Jur.2d *Products Liability* § 1581 (1999), compiling cases involving subsequently discovered damage resulting from the same source as the initial injury, and *Statute of limitations*, 91 A.L.R.3d 991, 1979 WL 52232 (1979), collecting cases applying statutes of limitations to product liability claims when plaintiffs lacked knowledge about the defect causing the injury.