Diane STEWART, Personal Representative of the estate of John STEWART, Plaintiff

v.

WALDO COUNTY, Scott Storey, William Cote, Jessica Blaney, Joseph Travis, Robert Cartier, and James Porter, Defendants.

No. CIV.04–24–B–W.

United States District Court, D. Maine.

Dec. 13, 2004.

Dale F. Thistle, Law Office of Dale F. Thistle, Newport, ME, for Diane M Stewart, as Personal Representative of the Estate of John Stewart, Plaintiff.

Michael J. Schmidt, Wheeler & Arey, P.A., Waterville, ME, for Waldo County, Scott Storey, Individually and in his official capacity as Sheriff of Waldo County, William Cote, Jessica Blaney, Joseph Travis, Robert Cartier, James Porter, Individually and in his official capacity as Deputy Sheriff of Waldo County, Defendants.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

WOODCOCK, District Judge.

While an inmate at the Waldo County Jail, John Stewart committed suicide. This tragedy led to this case. His widow, Diane Stewart, brought suit against the County, members of its Sheriff's Department, and officers of the Jail, alleging a 42 U.S.C. § 1983 claim that the County violated his constitutional right to medical care and supervision and a state wrongful death claim under 18–A M.R.S.A. § 2–804.[1] The Defendants moved for summary

---

1. Magistrate Judge Kravchuk reviewed the five counts in Plaintiff's Complaint and distilled them to two legal theories: 1) an alleged violation of 42 U.S.C. § 1983 for failure to provide medical care and supervision while in state custody as a prison inmate; and, 2) a

judgment and in a thorough and well reasoned opinion, the Magistrate Judge recommended this Court grant the Defendants' Motion. This Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record, including specifically a videotape of Mr. Stewart's time at the Waldo County Jail on July 7, 2002. This Court has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and it concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision and as further set forth herein.

## I.  DISCUSSION

In her Objection, the Plaintiff challenged eight of the Magistrate Judge's factual findings. This Court first addresses the Plaintiff's objections.[2]

### A.  Specific Objections.

#### 1.  Objection Number 1: Travis' Impression.

Plaintiff objects to the finding that "Although Travis sensed that Stewart was intoxicated, he observed that Stewart was able to walk without difficulty to the breathalyzer room." *Recommended Decision* at 4. Plaintiff claims this finding is in error, citing the information on the Inmate Intake Form, which was made known to Mr. Travis. The Form states in part:

"Appears to be under the influence of alcohol or drugs." The Plaintiff also points out that Mr. Stewart's blood alcohol level was later determined to be 0.19.

■  The Magistrate Judge's finding recited verbatim Defendants' Statement of Material Fact (DSMF) ¶ 14. Plaintiff admitted ¶ 14 without qualification in her response to Defendants' Statement of Material Fact. Plaintiff cannot now be heard to dispute a fact she previously admitted. Furthermore, the Magistrate Judge's finding is consistent with the videotape evidence, which clearly shows that Mr. Stewart was able to walk "without difficulty" before entering the breathalyzer room. Plaintiff's admission of ¶ 14 was compelled by the evidence.

#### 2.  Objection Number 2: Stewart's Level of Function.

Plaintiff objects to the finding that "Despite Stewart's high blood alcohol content, he was functioning and coherent enough to understand directions and to walk unassisted." *Recommended Decision* at 4. Plaintiff notes that Mr. Stewart was videotaped during the administration of the intoxilyzer test and contends he was unable to understand any of the questions during the Miranda warning. She states he responded "No" when asked if he understood the questions.[3]

---

state wrongful death action. The wrongful death action was presumably initiated under 18–A M.R.S.A. § 2–804, although the Complaint does not expressly reference the statute.

**2.** The conclusions in this opinion could be gleaned by carefully reviewing the Magistrate Judge's Recommended Decision and comparing her findings, the Statements of Material Fact, and the Plaintiff's objections. However, especially in view of the tragic circumstances underlying this case, this Court has concluded that the parties, particularly the Plaintiff, are

entitled to a further explanation for the decision to accept the Recommended Decision.

**3.** Plaintiff overstates Mr. Stewart's responses to the *Miranda* warnings. It is true that he repeatedly answered, "No," when asked if he understood he had a right to remain silent. Later, however, he confirmed he was represented by a lawyer, gave the last name of his attorney, and with considerable effort, told the officer the town in which his lawyer practiced.

The Magistrate Judge's finding was based in part on Defendants' Statement of Material Fact ¶ 32. Paragraph 32 states: "When Travis was informed of Stewart's blood alcohol level, although this confirmed his initial observation that Stewart was intoxicated, Travis also observed that Stewart was functioning and coherent enough to understand directions, *ask and answer questions,* and was able to walk to and from the intoxilyzer room unassisted." *DSMF* ¶ 32. (emphasis added). Plaintiff made a qualified response: "Qualified. Plaintiff admits the first part of this statement regarding observations confirmed. Plaintiff denies the second part of this statement. Travis couldn't converse with him." *Plaintiff's Response to Defendants' Statement of Material Facts* (PRDSMF) ¶ 32. Plaintiff cited the Travis Deposition at page 9, lines 11–13. The Travis testimony reads as follows:

Q. Were you able to converse with him enough to get through this report, this intake medical screening report?

A. No.

The Magistrate Judge properly, in this Court's view, interpreted the Plaintiff's objection to "the second part" to be directed to the portion of Defendants' Statement of Material Fact ¶ 32 that addressed Mr. Stewart's ability to "ask and answer questions." The reference to the Travis deposition did not address Mr. Stewart's ability to understand directions or to walk to and from the intoxilyzer room unassisted and as the Plaintiff failed to cite a record reference that disputed those portions of ¶ 32, they were taken as admitted. *Local Rule* 56(c), (e). Moreover, the Magistrate Judge reviewed and this Court has reviewed the videotape, which confirms her findings.

## 3. Objection Number 3: The 6:51 Check.

Magistrate Judge Kravchuk found that "Jessica Blaney, who performed the 6:51 check, discovered Stewart hanging from bars in his cell by means of a noose he had fashioned from his socks." *Recommended Decision* at 5. The Plaintiff objects to this finding, stating that Blaney was not performing the 6:51 check; instead, she was coincidentally retrieving another prisoner from the same area.

Magistrate Judge Kravchuk cited Defendants' Statement of Material Fact ¶¶ 39 and 41 for this finding. Paragraph 39 contains a number of statements taken from the Jail's log, including: "At 1851, it was logged that Officer Jessica Blaney, who was in the process of going to get an inmate for visits, checked in on Mr. Stewart and discovered him hanging." *DSMF* ¶ 39. Plaintiff admitted ¶ 39, but added that Travis had admitted "he may not have written these times contemporaneously." *PRDSMF* ¶ 39.

To buttress her position, Stewart refers to the September 29, 2003 report of Ralph E. Nichols, Director of Correctional Inspections for the State of Maine Department of Corrections, in which he concluded that the Jail had failed to comply with Standard E.11 of its Jail Policy and Procedures Manual, since his area had been unsupervised and he had been found "as a result of a staff person on their way to escort an inmate to visits and not a result of supervision of this area."

The Plaintiff admits the Jail Log states that Officer Blaney was performing the 6:51 check when she discovered Mr. Stewart, but she denies that this is in fact what happened. In reviewing Magistrate Judge Kravchuk's finding however, it is clear she was describing what the Jail log revealed, not making a finding of what in fact happened. The very first sentence of the

paragraph read: "Jail personnel maintain a hand-written, chronological log of events occurring in the jail." *Recommended Decision* at 5. The next sentence begins: "According to the log for July 7, 2002. . . ." *Id.* Although her Recommended Decision does not start each remaining sentence in the paragraph with "According to the log . . . ," it is clear Magistrate Judge Kravchuk was describing what was written in the log when she referred to Ms. Blaney's performance of the 6:51 check.

Moreover, Plaintiff ignores the additional finding in the Recommended Decision as follows:

> According to Nichols, "At the time of Stewart's death, staff had been assigned to conduct inmate visits leaving the area unsupervised. In fact, Mr. Stewart was found as a result of a staff person (Blaney) on (her) wa(y) to escort an inmate to visits and was not a result of supervision of this area."

*Recommended Decision* at 7–8.

### 4. Objection 4: Checks at 15 Minute Intervals.

Plaintiff objects to the following finding: "During this time, staff members checked on him approximately every fifteen minutes." *Recommended Decision* at 5. In her Recommended Decision, Magistrate Judge Kravchuk cited Defendant's Statement of Material Fact ¶ 35 for this finding. Paragraph 35 states: "Stewart was physically checked every fifteen minutes by staff members." Plaintiff admitted Defendants' Statement of Material Fact 35. Again, she cannot now be heard to deny what she previously admitted.

### 5. Objection 5: Cartier's Knowledge of Mr. Stewart Being Suicidal.

Plaintiff objects to Magistrate Judge Kravchuk's finding as follows: "Although Cartier knew that Stewart was in the facil-

ity and was intoxicated, he did not have any knowledge that Stewart was suicidal." *Recommended Decision* at 6. The basis for the objection is that the "(a)n intoxicated individual requires constant observation according to the Jail's own Policy and Procedures as well as the State's Standards."

In making her finding, Magistrate Judge Kravchuk cited Defendants' Statement of Material Fact ¶ 50, which reads in part: "Cartier knew that Stewart was in the facility and was intoxicated, but did not have any knowledge that Stewart was suicidal or at risk for any other reason." Again, Plaintiff admitted ¶ 50 and cannot be heard now to deny it. Moreover, Magistrate Judge Kravchuk's finding is not inconsistent with the Plaintiff's citation to Jail and State standards.

### 6. Objection 6: Expert Testimony: Lindsey Hayes.

Plaintiff objects to Magistrate Judge Kravchuk's finding that Defendants' expert, Lindsey Hayes, testified as follows: ". . . although Stewart's behavior was unusual and presented a cause for concern, it did 'not necessarily reflect suicidal behavior and certainly not high-risk suicidal behavior justifying constant observation.'" *Recommended Decision* at 7–8. The Plaintiff points to other portions of Ms. Hayes's testimony that place this opinion in a broader context.

Magistrate Judge Kravchuk cited Defendants' Statement of Material Fact ¶ 58 for this finding. Paragraph 58's second sentence reads as follows: "In contrast to this characterization, it is Hayes' opinion that although Mr. Stewart's behavior on July 7, 2002, was unusual and cause for concern, it did not necessarily reflect suicidal behavior and certainly not high risk suicidal behavior justifying constant observation." *DSMF* ¶ 58. The Plaintiff responded as follows: ". . . Plaintiff admits

the second sentence but adds Hayes has stated that most suicides in jails occur while inmates are intoxicated." *PRDSMF* ¶ 58. Plaintiff cannot now object to what she earlier admitted.

### 7. Objection 7: The Magistrate Judge's Objective Characterization.

Plaintiff objects to Magistrate Judge Kravchuk's following statement:

> In my view, a more objective characterization is that Stewart appeared to suffer from some physical impairment, presumably from alcohol abuse the prior day, a seriously depressed emotional affect ("despondent" is an understatement), and mental health issues that interfered with his ability to understand or appreciate what was going on around him (I have in mind here his response to the breathalyzer's beeping).

*Recommended Decision* at 4 (footnote omitted). Plaintiff's objection is that the Defendants' own expert characterized the behavior as bizarre.

First, Plaintiff omits the predicate sentence leading to Magistrate Judge Kravchuk's characterization. While in the breathalyzer room, the breathalyzer itself continued to beep periodically and occasionally it emitted a longer high pitched sound. Mr. Stewart was sitting in the corner right next to this machine and its noises were clearly affecting him. Plaintiff sought to characterize his reactions by saying Stewart "jumped every time the intoxilyzer machine made a noise, and reacted as if he had heard a gunshot." *Plaintiff's Statement of Material Facts* ¶ 13. Magistrate Judge Kravchuk prefaced her statement about Mr. Stewart's reaction by saying: "Although it may be

only an issue of style, I would not, having viewed the tape, use that precise language to describe Stewart's behavior." *Recommended Decision* at 9. She then presented the "more objective characterization" set forth above. *Id.*

Having reviewed the same videotape, this Court concurs with Magistrate Judge Kravchuk's characterization. Mr. Stewart was not reacting as Plaintiff wrote, "as if he had heard a gunshot." His reactions are difficult to put into words, but in this Court's view, Magistrate Judge Kravchuk's description is on the mark and consistent with the Defendants' expert's characterization of "bizarre." [4]

### 8. Objection 8: Stewart's Admissions.

Plaintiff objects to Magistrate Judge Kravchuk's finding as follows: "The Defendants also assert that neither Travis nor Porter subjectively believed that Stewart presented the risk of suicide, and the Plaintiff admits the same." *Recommended Decision* at 6. The basis of Plaintiff's objection is that she "could do little else than admit what was found . . . in statements of various named Defendants . . ." *Plaintiff's Objection to Magistrate's Proposed Findings and Recommendations* at 5.

In support of this finding, Magistrate Judge Kravchuk cites Defendants' Statement of Material Fact ¶¶ 54 and 55. Paragraph 54 states in part: ". . . Travis did not believe that Stewart presented the risk of suicide." Paragraph 55 states in part: "At no time . . . did Deputy Porter believe that Stewart presented a risk of suicide." Plaintiff admitted ¶¶ 54 and 55. Although Plaintiff claims she had no choice but to make these admissions, the Magistrate

---

4. Knowing what is to follow, it is painful to watch the videotape. It is readily apparent something is not right with Mr. Stewart, but it is equally difficult to know what is wrong. Taken as a whole, the videotape supports the factual premise of Defendants' Motion.

Judge had a perfect right to rely on the admissions the Plaintiff herself made.

## B. Summary Judgment Standard.

In contesting these eight findings, the Plaintiff consistently points to other potentially contrary evidence in the record. She ends by urging this Court to conclude there is a genuine issue of material fact as to whether "the Defendants were deliberately indifferent in failing to provide continuous observation of John Stewart and that this failure led to his death by suicide." *Plaintiff's Objection* at 7. The Plaintiff's legal objection to the Recommended Decision is oblique. The Plaintiff could not be asserting the objected to findings are without record support, since (with the exception of Objection 7) she previously admitted each finding. Instead, by citing other evidence, she has implicitly raised another issue: whether the Recommended Decision followed the dictates of Fed.R.Civ.P. 56(c), which requires there be "no genuine issue of material fact" before summary judgment can be granted.

The Plaintiff's objection seems to be that, in making her findings, Magistrate Judge Kravchuk failed to view the evidence in a light most favorable to her theory of the case. Under the "conventional summary judgment praxis," the Court is required to view the facts in a light most favorable to the Plaintiff's theory of the case consistent with record support. *Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11, 16 (1st Cir.2002). In the event of factual disputes, as Plaintiff contends exist in this case, the Court is required to "review the record and ask if a fact finder could rationally reach a different conclusion from that of the court." *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000).

Not every factual dispute, however, "is sufficient to thwart summary judgment."

*McCarthy v. Northwest Airlines*, 56 F.3d 313, 315 (1st Cir.1995). The contested fact must be "material" and the dispute must be "genuine." *Id.* In this context, "material" means "that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Id.* (quoting *United States v. One Parcel of Real Property Great Harbor Neck, New Shoreham, R.I.,* 960 F.2d 200, 204 (1st Cir.1992)). By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party..." *Id.*

In her Recommended Decision, Magistrate Judge Kravchuk carefully delineated five Defendant's Statements of Material Fact she relied upon in determining none of the Defendants was subjectively indifferent. *Recommended Decision* at 14–15. The five statements were found at ¶¶ 48, 49, 50, 54 and 55 and essentially assert none of the officers was subjectively aware Mr. Stewart presented a risk of suicide. In her Response to the Defendants' Statements of Material Fact, Plaintiff admitted each of these paragraphs.

In her Objection to the Recommended Decision, she failed to raise any objection to the Magistrate Judge's findings consistent with ¶¶ 48 and 49, regarding the subjective intent of Officers Cote and Blaney. She did object to the Magistrate Judge's findings consistent with ¶¶ 50, 54 and 55, regarding the subjective intent of Officer Cartier, Sergeant Travis, and Deputy Porter. The question is whether, in positing other contradictory evidence, she raised genuine and material issues of fact. In the context of this case, she could do so in at least two ways: 1) she could offer countervailing direct evidence that the officers were in fact deliberately indifferent; or, 2) she could offer an "inference from

circumstantial evidence." *Farmer v. Brennan,* 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see Giroux v. Somerset County,* 178 F.3d 28, 32 (1st Cir.1999).

### 1. Direct Evidence of Deliberate Indifference.

■ Paragraph 50, which Plaintiff admitted, states that "Cartier knew that Stewart was in the facility and was intoxicated, but did not have any knowledge that Stewart was suicidal or at risk for any reason." *DSMF* ¶ 50. In opposition to this finding, Plaintiff asserts that the policies and procedures of the Jail and the State require constant monitoring of intoxicated individuals. These asserted facts do not directly contradict her admission that Cartier did not know Mr. Stewart "was suicidal or at risk for any reason." The dispute is not therefore "genuine;" namely, this countervailing evidence is not direct evidence that could cause a jury to resolve Officer Cartier's subjective intent in favor of the Plaintiff.

Similarly, Plaintiff contends that DSMF ¶¶ 54 and 55, both of which she admitted, are contradicted by other evidence. The Magistrate Judge recited both ¶ 54 and ¶ 55:

> Had Stewart been considered a suicide risk, Travis would have removed Stewart's clothing in its entirety and provided him with what is called a suicide smock; however, Travis did not believe that Stewart presented the risk of suicide. DSMF ¶ 54.

> At no time during the process of arresting Stewart, transporting him to Waldo County Jail, or giving him the intoxilyzer test did Deputy Porter believe that Stewart presented a risk of suicide. DSMF ¶ 55.

In her Objection, the Plaintiff points to evidence of his level of intoxication, prior records in the Jail of his suicidal tendencies, the removal of some, but not all his clothes, and his appearance on the videotape. Again, none of these facts, even viewed in a light most favorable to Mr. Stewart, is direct evidence of the "subjective indifference" of either Travis or Stewart.

### 2. Inference from Circumstantial Evidence.

Plaintiff's last argument must be that even if there is no direct evidence of "subjective indifference," there is sufficient evidence of an unusually serious risk of harm, of the Defendants' actual knowledge or willful blindness to that elevated risk, and of their failure to take obvious steps to address that known, serious risk, *see Manarite v. Springfield,* 957 F.2d 953, 956 (1st Cir.1992), to generate a genuine issue of material fact. *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970 ("a factfinder may conclude that a prison official knew of a substantial risk from the very fact the risk was so obvious.") Even if the all of the evidence is viewed in a light most favorable to the Plaintiff, this Court agrees with the Magistrate Judge there is insufficient evidence to allow an inference of deliberate indifference within the standards imposed by the law.

## II. CONCLUSION

1. This Court therefore ORDERS that the Recommended Decision of the Magistrate Judge is hereby AFFIRMED.

2. This Court further ORDERS that the Defendants' Motion for Summary Judgment is GRANTED.

**SO ORDERED.**